UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                       :
                                                            :     Chapter 11
GREAT CIRCLE PARK LLC                                       :
                                                            :     Case No. 25-
                              Debtor.                       :
------------------------------------------------------------x

**DECLARATION OF PAMELA FROST PURSUANT TO
LOCAL BANKRUPTCY RULE 1007-2**

Pamela Frost, declares as follows pursuant to 28 U.S.C. § 1746:

1.     I am the managing member of Great Circle Park LLC ("Debtor" or "Company"). In accordance with the Local Bankruptcy Rule ("L.B.R.") 1007-2 of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), I submit this declaration ("Declaration") in connection with the above-captioned Chapter 11 case (the "Chapter 11 Case").

2.     I am familiar with the business and financial condition of the Debtor. In making any and all financial representations in this Declaration, I am relying on my own personal knowledge and the Debtor's books and records. Unless otherwise indicated, all financial information contained herein is presented on an unaudited basis.

3.     If I were called to testify, I would testify competently to the facts set forth in this Declaration and I am authorized to submit this Declaration on behalf of the Debtor.

**I.     Required Contents of Declaration**

   A.   Nature of Debtor's Business.

4.     As discussed in more detail below, the Debtor owns the real property, a parking garage, located at 70 Little West Street, Condominium Unit D (Parking Garage), New York, NY 10004 (the "Property"). The Debtor leases the Property to MP Battery 70 LLP, an entity that operates the parking garage located therein (the "Parking Garage").

Pg 2 of 9

5. The Debtor has no operations or business other than its business relating to the leasing of the Parking Garage.

6. The Debtor has one employee, Josh Futterman, who acts as an independent contractor for the Debtor's legal and business affairs, and no officers or directors other than me in my role as Managing Member.

### i. The Parking Garage Lease.

7. Pursuant to that certain Agreement of Lease, dated April 30, 2019 between the Debtor as Landlord and MP Battery 70 LLP, as Tenant, the Debtor leased the entire Property to MP Battery in order for it to operate the Parking Garage. The Parking Garage Lease is due to expire on April 30, 2029.

### ii. Debtor's Mortgage and Parking Spots Licensing in Lieu of Sales.

8. On December 18, 2017, the Debtor entered into the Leasehold Consolidation, Modification and Extension Agreement with Flagstar Bank, N.A. , as successor by merger to New York Community Bank ("Flagstar"), wherein the Debtor agreed to assume all of the obligations and agreements of the notes and mortgages, deeds of trust or other security instruments (collectively, the "Mortgage") in exchange for a loan of $4,500,000.00. The maturity date of the Mortgage is January 1, 2028. The current balance of the Mortgage is $4,008,596.39.

9. Pursuant to its terms, the Mortgage had a flat interest rate of 4% from January 2018 through December 31, 2022. From January 1, 2023 through the end of the term, the Mortgage switches to a floating interest rate which is equal to the sum of (i) the highest prime rate as published in The New York Times on each January 1st subsequent to January 1, 2023, (ii) 275 basis points and rounded up to the next one-eighth of one percentage point (0.125%).

10. Like many borrowers in recent years, the Debtor has struggled to continue making

payments under its Mortgage due to the higher floating interest rates. Prior to filing this Chapter 11 Case, the Debtor sought to enter into a mutual agreement with Flagstar Bank that would authorize the Debtor to implement the Licensing Sales contemplated and described in more detail below. Unfortunately, the Debtor's attempts to even discuss with Flagstar a restructuring of the debt that would be premised on licensing transactions have been met by obfuscation and outright refusals.

11. Upon the filing of a plan of reorganization, the Debtor will seek to implement the sale of licenses to a certain number of the parking spots and use portions of the proceeds generated from those licensing sales to pay down the principal of the Mortgage (the "Parking Spot Licenses in Lieu of Sale"). The proceeds from each parking spot that is licensed shall be divided between Flagstar in order to pay down its debt, a broker engaged to market and sell the parking spot licenses, MP Battery in connection with any costs accrued during the marketing and sale process, and the remaining amounts to the Debtor to be used to satisfy any claims.

B. Organizational and Capital Structure.

12. The Debtor is a New York limited liability company. I am the only member of the Debtor and also its manager.

13. The Debtor has an open loan balance on its Mortgage in the amount of $4,008,596.39.

C. Need for Filing.

14. As noted above, the Debtor's financial problem arose when the floating interest rate on its Mortgage with Flagstar Bank increased significantly due to recent rate increases implemented by the U.S. Federal Reserve. The increased rate has impacted the Debtor's ability to meet the monthly payments and continue operating as a going concern. Based on that, the Debtor

3

sought out Flagstar in an attempt to implement the Licensing Sales, but has been largely met with little to no cooperation.

15. Further, on July 21, 2025, Flagstar commenced a legal action seeking to foreclose the Mortgage and insert a rent receiver. The legal action is currently pending. See *Flagstar Bank, N.A., as successor by merger to New York Community Bank v. Great Circle Park LLC et. al.*, New York State Supreme Court, NY County, Index No. 850315/2025 (the "State Court Litigation"). On August 6, 2025, the New York State Supreme Court entered an order appointing Shannon W. Hill (the "Receiver") as temporary receiver of rents and profits from the Parking Garage.

16. As such, the Debtor elected to file this bankruptcy case in the hopes of implementing its Parking Spot Licenses in Lieu of Sale process and reducing/repaying the balance on its Mortgage.

17. The Debtor intends to use the protections and resources of Chapter 11 to maximize the value of its assets, while generating enough revenue to reduce the principal amount of the Mortgage owed.

D. Debtor's Case Not Originally Commenced Under Chapter 7

18. The Chapter 11 Case was not originally commenced under chapter 7 of the Bankruptcy Code. Accordingly, L.B.R. 1007-2(a)(2) is not applicable.

E. Pre-petition Creditors' Committee

19. In accordance with L.B.R. 1007-2(a)(3), to the best of the Debtor's knowledge, no pre-petition creditors' committee has been formed.

F. Holders of the Twenty Largest Unsecured Claims

20. In accordance with L.B.R. 1007-2(a)(4), I am currently not aware of any parties holding unsecured claims against the Debtor. However, a list setting forth the Debtor's twenty (20)

4

largest unsecured creditors excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31) shall be disclosed when the Debtor's Schedules are finalized and filed.

G. Holders of Five Largest Secured Claims

21. In accordance with L.B.R. 1007-2(a)(5), there is only one holder of a secured claim against the Debtor:

Flagstar Bank, N.A.
102 Duffy Ave.
Hicksville, NY 11810

Flagstar's secured claim is in the nature of a leasehold mortgage on the Parking Garage in the amount of $4,008,596.39.

H. Summary of Assets and Liabilities

22. As required by L.B.R. 1007-2(a)(6), a summary of the Debtor's assets and liabilities is being compiled now and will be disclosed when filed with its Schedules.

I. Debtor's Securities.

23. The Debtor does not have any stock that is publicly held. The holders of the Debtor's equity interests are as follows: Pamela Frost.

J. Property in Possession or Custody of Custodian

24. In accordance with L.B.R. 1007-2(a)(8), on August 6, 2025, the New York State Supreme Court in the State Court Litigation entered an order appointing the Receiver. However, the Receiver has not yet taken possession of any of the Debtor's property.

K. Premises Where the Debtor Conducts Business

25. In accordance with L.B.R. 1007-2(a)(9), the Debtor's principal office is located at 135 Central Park West, Apt. 4SC, New York, NY 10023.

L. Location of Debtor's Assets and Books and Records

5

26. Pursuant to L.B.R. 1007-2(a)(10), the majority of the Debtor's books and records are located at the Debtor's office at 135 Central Park West, Apt. 4SC, New York, NY 10023.

M. Threatened or Pending Actions Against the Debtor

27. The Debtor is a party to the following pending action:

a. *Flagstar Bank, N.A., as successor by merger to New York Community Bank v. Great Circle Park LLC et. al.,* New York State Supreme Court, NY County, Index No. 850315/2025.

N. The Debtor's Senior Management

28. Pursuant to L.B.R. 1007-2(a)(12), the Debtor's senior management consists of Pamela Frost and her son, Josh Futterman, who acts as who acts as an independent contractor for the Debtor's legal and business affairs.

II. **Additional Information Required by L.B.R. 1007-2(b)**

29. In accordance with L.B.R. 1007-2(b), the Debtor intends to continue the operation of its business and the management of its Property as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

30. In accordance with L.B.R. 1007-2(b)(1), the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders, and partners) for the thirty (30) day period following the Petition Date is approximately $3,000.00. As noted above, the Debtor has one employee, independent contractor Josh Futterman, who acts as an independent contractor for the Debtor's legal and business affairs.

31. In accordance with L.B.R. 1007-2(b)(2)(A), the amounts paid and proposed to be paid for the thirty (30) day period following the Petition Date for services rendered by me, the Debtor's officer is approximately $15,000.00.

6

32. The Debtor does not expect to retain a financial or business consultant, therefore L.B.R. 1007-2(b)(2)(C) is not applicable.

33. Pursuant to L.B.R. 1007-2(b)(3), annexed hereto as **Exhibit 1** is a schedule of the Debtor's estimated receipts and disbursements. As a result of an administrative oversight, the Visionaire, the owner of the real property in which the Parking Garage is located, previously overcharged the Debtor for payments made in lieu of taxes and for condominium fees. Accordingly, the Visionaire has provided, and is anticipated to continue providing, monthly credits to the Debtor in the approximate amount of $23,000, as more fully set forth in **Exhibit 1**.

### III. Conclusion

34. The Debtor believes that the protections afforded by chapter 11 will enable it to maximize the value of the Debtor, for its creditors and its estate.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
August 11, 2025

*/s/ Pamela Frost*_____
Pamela Frost, Managing Member

# **EXHIBIT 1**

Schedule of Estimated Receipts and Disbursements

# Great Circle Park LLC Budget
## (13 Weeks)

| Income | Month 1 | Month 2 | Month 3 |
|---|---|---|---|
| Rent | $ 54,636.35 | $ 54,636.35 | $ 54,636.35 |
| Water and Sewer | $ 42.44 | $ 42.44 | $ 42.44 |
| **Total** | **$ 54,678.79** | **$ 54,678.79** | **$ 54,678.79** |
| | | | |
| **Expenses** | | | |
| Salaries | $ 18,000.00 | $ 18,000.00 | $ 18,000.00 |
| Legal and Accounting | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 |
| Mortgage Interest | $ 23,901.04 | $ 23,901.04 | $ 23,901.04 |
| Expert Witnesses | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 |
| Insurance | | $ 7,500.00 | |
| Office Expenses | $ 200.00 | $ 200.00 | $ 200.00 |
| Software | $ 100.00 | $ 100.00 | $ 100.00 |
| Total | $ 52,201.04 | $ 59,701.04 | $ 52,201.04 |