**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re                                :

                                    :          Chapter 11

GREAT CIRCLE PARK LLC            :

                                    :          Case No. 25-11767

                 Debtor.       :

-----------------------------------------------------------x

## DEBTOR'S AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF REORGANIZATION

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 W. 41st St., 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for the Debtor and Debtor in Possession*

Dated: New York, New York
       April 14, 2026

**TABLE OF CONTENTS**

ARTICLE I – Definitions .................................................................................................................4

ARTICLE II – Summary .................................................................................................................8

ARTICLE III – Treatment of Administrative Claims........................................................................8

    3.1.    Administrative Claims ......................................................................................................8

ARTICLE IV – Treatment of Priority Tax Claims.......................................................................8, 9

    4.1.    Priority Tax Claims .........................................................................................................9

ARTICLE V – Classification of Claims and Interests......................................................................9

    5.1.    Designation of Classes Pursuant to Sections 1122 and 1123(a)(1) of the Code......9

    5.2.    Allowed Amount in Particular Class .........................................................................9

    5.3.    Classes.........................................................................................................................9

ARTICLE VI – Treatment of Claims and Interests .........................................................................9

    6.1.    Class 1:  Flagstar Secured Claim ...............................................................................9

        (a)    Treatment ...........................................................................................................10

        (b)    Full Settlement ....................................................................................................10

        (c)    Class 1 is Impaired under the Plan......................................................................10

    6.2.    Class 2:  General Unsecured Claims..........................................................................10

        (a)    Treatment ...........................................................................................................10

        (b)    Settlement ...........................................................................................................10

        (c)    Class 2 is Unimpaired under the Plan..................................................................10

    6.3.    Class 3: Interests .......................................................................................................10

        (a)    Treatment ...........................................................................................................10

        (b)    Class 3 is Unimpaired under the Plan..................................................................10

ARTICLE VII – Identification of Classes of Claims and Interests Impaired and Unimpaired
      Under the Plan ...................................................................................................10, 11

    7.1.    Voting of Class 1 Claims ....................................................................................11

    7.2.    Acceptance by an Impaired Class of Claims ......................................................11

    7.3.    Class of Claims Unimpaired by this Plan is Conclusively Presumed to Accept this
        Plan ....................................................................................................................11

    7.4.    Confirmation Pursuant to Section 1191 of the Bankruptcy Code
        ("Cram Down") ...................................................................................................11

ARTICLE VIII – Controversy with Respect to Impairment ............................................11

ARTICLE IX – Unexpired Leases and Executory Contracts ...........................................11

    9.1.    Assumption and Rejection of Executory Contracts and Unexpired Leases ..........11

    9.2.    Bar Date for Rejection Damage Claims...............................................................12

ARTICLE X – Means for Implementing the Plan ..........................................................12

    10.1.    Plan Funding ......................................................................................................12

    10.2.    Approval of Flagstar Settlement Agreement ...........................................12, 13, 14

    10.3.    Property Sale .............................................................................................14, 15

    10.4.    Execution of Documents......................................................................................15

    10.5.    Recording of Documents .....................................................................................15

    10.6.    Transfer Tax Exemptions.....................................................................................15

    10.7.    Transactions on Business Days.............................................................................15

    10.8.    Preservation and Vesting of Claims, Rights, Demands and Causes of Action.15, 16

ARTICLE XI – Distributions; Disputed Claims Reserve..................................................16

    11.1.    Timing of Distributions Due Under Plan...............................................................16

    11.2.    Manner of Distributions.......................................................................................16

    11.3.    Cash Payments....................................................................................................16

11.4. Administrative Expense Claims Bar Date ........................................................16

11.5. Disputed Claims Reserve ...........................................................................16, 17

11.6. No Interest ...............................................................................................17

11.7. Withholding of Taxes ................................................................................17

11.8. Undeliverable or Unclaimed Distributions ...............................................17, 18

11.9. Post-Effective Date Services by the Debtor's Professionals ................................18

ARTICLE XII – Procedures for Resolving Disputed Claims ..........................................18

12.1. Objections to Claims ..................................................................................18

12.2. Payments and Distributions with Respect to Disputed Claims ...........................19

12.3. Claims Reserve – Estimation ......................................................................19

12.4. Distributions After Allowance of Disputed Claims ..........................................19

12.5. Distributions After Disallowance of Disputed Claims ......................................19

12.6. Setoffs and Recoupments ............................................................................19

ARTICLE XIII – Injunction, Release and Exculpation ...........................................19, 20

13.1. Injunction ................................................................................................20

13.2. Release ....................................................................................................20

13.3. Exculpation ..............................................................................................20

ARTICLE XIV – Conditions Precedent to Confirmation and the Effective Date ..................20

14.1. Conditions Precedent to Confirmation of the Plan ......................................20, 21

14.2. Conditions Precedent to the Effective Date .....................................................21

ARTICLE XV – Discharge; Limitation of Liability ....................................................21

15.1. Discharge in the case of Refinancing .........................................................21, 22

15.2. No Discharge Upon Property Sale ..................................................................22

15.3. Continuation of Stays ................................................................................................22

ARTICLE XVI - Miscellaneous Provisions ...............................................................................22

16.1.   Bankruptcy Court to Retain Jurisdiction................................................22, 23, 24

16.2.   Binding Effect of the Plan..........................................................................24

16.3.   Fractional Cents ........................................................................................24

16.4.   Successors and Assigns..............................................................................24

16.5.   Blank Ballots.............................................................................................24

16.6.   Authorization of Corporate Action ...........................................................24

16.7.   Withdrawal of the Plan .............................................................................24

16.8.   Captions ....................................................................................................24

16.9.   Method of Notice ......................................................................................24

16.10.  Amendments and Modifications to Plan ...................................................25

16.11.  Section 1125(e) of the Code......................................................................25

Great Circle Park LLC (the "Debtor") hereby proposes the following amended combined Disclosure Statement and Plan of Reorganization, pursuant to the provisions of Chapter 11 of Title 11 of the United States Code.

## BACKGROUND

The Debtor is engaged in the business of owning a piece of property located at 70 Little West Street, New York, NY 10004 (the "Property"). The Property has a parking garage located on it and has been in operation since 2017 (the "Parking Garage"). The Parking Garage is currently operated pursuant to a lease agreement dated April 17, 2019 with MP Battery 70 LLC ("MP Battery").

### A.      Circumstances Leading to Filing of Chapter 11 Case

The Debtor's financial problems arose principally when the floating interest rate on its Mortgage with Flagstar Bank, N.A., as successor by merger to New York Community Bank ("Flagstar"), increased significantly due to the recent rate increases implemented by the U.S. Federal Reserve. This is an issue that has plagued many borrowers in recent years and the Debtor has struggled to continue making payments under its Mortgage. Prior to filing this Chapter 11 Case, the Debtor sought to enter into a mutual agreement with Flagstar that would authorize the Debtor to implement a licensing sale for the various parking spots in the Parking Garage. Flagstar, however, was unwilling to release its collateral under the terms proposed by the Debtor.

On August 12, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

### B.      Cash Collateral

Flagstar is the Debtor's prepetition secured lender under a mortgage loan secured by the Debtor's sole asset, the Parking Garage located at 70 Little West Street, New York, New York. As of the Petition Date, Flagstar asserted an outstanding balance of not less than $4,008,596.39, plus accrued interest, fees, and other amounts allowable under section 506(b) of the Bankruptcy Code.

Because substantially all of the Debtor's revenues constitute cash collateral, the Debtor was required to obtain Flagstar's consent or Court authorization to use such funds in the ordinary course.

Following good faith, arm's-length negotiations, the Debtor and Flagstar entered into three successive interim cash collateral stipulations, each approved by the Bankruptcy Court.

Most recently, on January 9, 2026, the Bankruptcy Court entered the Third Stipulation and Order Authorizing Interim Use of Cash Collateral and Granting Adequate Protection (the "Third Interim Cash Collateral Order").

1

The Third Interim Cash Collateral Order authorized the Debtor to use cash collateral pursuant to an agreed budget, subject to a monthly cap and reporting requirements, and requires the Debtor to make monthly non-default interest payments to Flagstar as adequate protection.

The interim cash collateral arrangements have permitted the Debtor to continue operations and preserve the value of its property while pursuing restructuring alternatives in this Chapter 11 Case.

**C.    Exclusivity**

On November 10, 2025, the Debtor filed its Motion for Entry of an Order Extending Exclusive Periods During Which Debtor May File a Plan and Solicit Acceptances Thereof [Dkt. No. 40] (the "Exclusivity Motion") pursuant to sections 105(a) and 1121(d) of the Bankruptcy Code.

In the Exclusivity Motion, the Debtor sought an extension of the 120-day period during which it has the exclusive right to file a chapter 11 plan and the 180-day period during which it may solicit acceptances thereof (the "Exclusive Periods"). The Debtor requested a 120-day extension of each period in order to permit it sufficient time to (i) continue negotiations with its operating tenant, MP Battery, regarding the acquisition of such tenant's interest and the assumption of direct management of the Debtor's sole asset, the Parking Garage located at 70 Little West Street, New York, New York; (ii) evaluate strategic alternatives, including a refinancing of its existing mortgage indebtedness or a sale of the Parking Garage; and (iii) establish a bar date and obtain clarity regarding the universe of claims against the estate.

The Debtor further represented that it had commenced making monthly non-default interest payments to its secured lender in accordance with section 362(d)(3) of the Bankruptcy Code, had timely filed its operating reports, and was making good faith progress toward formulation of a viable chapter 11 plan.

By Order entered December 10, 2025, the Bankruptcy Court granted the Exclusivity Motion and extended the Debtor's exclusive period to file a chapter 11 plan through and including April 9, 2026, and the exclusive period to solicit acceptances thereof through and including June 8, 2026.   The Court's Order was entered without prejudice to the Debtor's right to seek further extensions of the Exclusive Periods, if necessary.

**D.    Settlement with MP Battery 70 LLC**

The Debtor and MP Battery are parties to a lease dated April 30, 2019 (the "Lease") for the Parking Garage, with a term running from May 1, 2019 through April 30, 2029. Pursuant to the Lease, MP Battery operates the Parking Garage and is obligated to pay escalating fixed rent commencing at approximately $600,000 per year, together with additional rent. The Lease requires MP Battery to continuously operate the premises as a fully attended public parking facility, maintain the property in good condition, and comply with applicable laws and condominium requirements, and is secured by a $150,000 letter of credit. The Lease also

2

contains customary provisions relating to alterations, insurance, assignment and subletting, and events of default.

Prior to the Petition Date, a dispute arose regarding alleged late payments of rent by MP Battery between September 1, 2024 and September 2, 2025, which the Debtor asserted resulted in the accrual of late fees totaling approximately $73,839.30.

Following negotiations, the Debtor and MP Battery agreed to resolve the dispute pursuant to a settlement under which MP Battery will pay the Debtor $50,979.37 in full and final satisfaction of the alleged late fee obligations.

Upon payment of the settlement amount and effectiveness of the settlement, the parties will exchange mutual releases with respect to the disputed late fee claims. The settlement does not otherwise modify the terms of the Lease, and MP Battery will continue to perform its obligations thereunder, including the timely payment of rent.

The Debtor believes that the settlement represents a fair and reasonable compromise that avoids the expense and uncertainty of litigation and is in the best interests of the estate and its creditors.

**E.      Retention of Marcus & Millichap**

In connection with its efforts to market and monetize its sole asset, the Debtor shall file an application to retain Marcus & Millichap Real Estate Investment Services, Inc. ("Marcus") as its real estate broker, effective as of March 31, 2026. Marcus is a nationally recognized brokerage firm with substantial experience in the marketing and sale of commercial real estate assets, including properties similar to the Parking Garage. Pursuant to the proposed retention, Marcus will be responsible for marketing the Parking Garage, identifying prospective purchasers, and negotiating the terms of a sale transaction, subject to the Debtor's approval. In addition, as an alternative to a sale, Marcus will assist the Debtor in pursuing a refinancing of the Parking Garage. As compensation, Marcus will be entitled to a commission equal to four percent (4%) of the gross purchase price in connection with a sale, or four percent (4%) of the gross loan amount in connection with a refinancing, in each case payable solely upon the closing of such transaction, together with a modest marketing budget. The Debtor believes that the retention of Marcus on these terms is reasonable, market-based, and in the best interests of the estate, as it is designed to maximize value for creditors through a competitive sale or refinancing process.

**F.      Flagstar 2004 Investigation**

At the outset of this Chapter 11 Case, Flagstar sought authority pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to conduct an examination of the Debtor in connection with its investigation into the Debtor's financial affairs, business operations, and restructuring efforts. By Order dated November 12, 2025, the Bankruptcy Court granted Flagstar's request to the extent it sought deposition testimony and directed that a deposition occur on or before December 12, 2025.

3

Prior to entry of the Court's Order, the Debtor voluntarily produced the documents requested by Flagstar, obviating any dispute as to document compliance.

Consistent with the Court's directive and in furtherance of transparency and good-faith engagement with its secured lender, the Debtor fully cooperated in the Rule 2004 process. On December 9, 2025, Josh Futterman, in his capacity as corporate representative of the Debtor, appeared for and sat for a deposition, thereby satisfying the examination contemplated by the Rule 2004 Order.

The Rule 2004 process has been completed without incident, and the Debtor complied with Flagstar's investigative requests in full.

# ARTICLE I
## Definitions

For the purposes of this Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1    "Administrative Claims" shall mean all costs and expenses of administration of the Chapter 11 Case Allowed under Section 503(b) or 330(a) of the Code and that are entitled to priority under Section 507(a)(2) of the Code.

1.2    "Allowed" shall mean a Claim or Interest or any portion thereof that (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in its Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.3    "Avoidance Actions" shall mean any and all Claims or Causes of Action of a trustee or debtor-in-possession under the Code, including, without limitation, under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, New York State Debtor and Creditor law, or other applicable law, against any Entity or Person, whether arising before or after the Effective Date, that have not been fully resolved or disposed of prior to the Effective Date, whether or not litigation with respect to same has been commenced prior to the Effective Date.

1.4    "Ballot" shall mean the voting form distributed to holders of Claims or Interests in Classes that are Impaired and entitled to vote on the Plan for purposes of indicating acceptance or rejection of the Plan.

1.5    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

1.6    "Business Day" shall mean any day other than a Saturday, Sunday or "legal holiday" as defined in Rule 9006(a).

1.7    "Cash" shall mean cash and cash equivalents, including but not limited to bank deposits, checks and other similar items, in each case denominated in United States dollars.

4

1.8    "Causes of Action" shall mean any and all actions, causes of action, suits, debts, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.9    "Chapter 11 Case" shall mean the Debtor's case filed under chapter 11 of the Code currently pending before the Bankruptcy Court under the case caption, In re Great Circle Park LLC, Case No. 25-11767 (MG).

1.10    "Claim" is defined in Section 101(5) of the Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under Sections 550 and 553 of the Code and any claim against the Debtor that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under Section 507(a) of the Code.

1.11    "Class" shall mean a group of Claims or Interests that are substantially similar in nature and are grouped together for similar treatment pursuant to the Plan.

1.12    "Code" shall mean Title 11 of the United States Code, Section 101 et. seq., as amended from time to time and applicable to this Chapter 11 Case.

1.13    "Conditions Precedent to the Effective Date" shall mean all of the conditions set forth in Section 14.2 of the Plan, which must be satisfied or waived, if subject to waiver, prior to the Effective Date of the Plan.

1.14    "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.15    "Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Code.

1.16    "Debtor" shall have the meaning assigned to it in the preamble of this Plan.

1.17    "Disputed Claim" or "Disputed Interest" shall mean any Claim or Interest, as applicable, designated as disputed, contingent or unliquidated on the Schedules and/or any Claim or Interest, as applicable, against which an objection to the allowance thereof has been interposed, which objection has not been determined by order of the Bankruptcy Court.

1.18    "Disputed Claims Reserve" shall mean the reserve to be established for Disputed Claims in accordance with the terms hereof, which shall be established as soon as practicable after the Effective Date

1.19    "Distribution" shall mean a distribution of Cash pursuant to the Plan, which shall commence on the Effective Date.

5

1.20    "Effective Date" shall mean the later of (a) the first Business Day after the entry of the Confirmation Order on which (i) the Closing of the Property Sale or Refinancing shall have occurred, and (ii) effectiveness of the Confirmation Order has not been stayed, or (b) such other date following the Confirmation Date that the Debtor designates.

1.21    "Entity" shall have the meaning assigned to it in Section 101(15) of the Code.

1.22    "Final Decree" shall mean the order to be entered by the Bankruptcy Court closing the Chapter 11 Case in accordance with Section 350(a) of the Code and Rule 3022.

1.23    "Final Order" shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has been waived or expired and as to which no appeal, petition for review or rehearing is pending or, in the case of an appeal, any such appeal or petition for review, rehearing or certiorari has been dismissed.

1.24    "Flagstar" shall mean Flagstar Bank, N.A., as successor by merger to New York Community Bank, the mortgage holder on the Parking Garage.

1.25    "Flagstar Settlement" shall mean the settlement between Flagstar and the Debtor, the terms of which are set forth in Article X of this Plan.

1.26    "General Unsecured Claim" shall mean any Claim that is not an Interest and does not qualify as an Administrative Claim, Priority Tax Claim, Secured Claim or Priority Unsecured Claim, including, without limitation, any Claim based upon pre-petition trade accounts payable or the rejection of an executory contract during the pendency of this Chapter 11 Case.

1.27    "Impaired" has the meaning assigned to it in Section 1124 of the Code.

1.28    "Interest" shall mean any equity interest in the Debtor, including, but not limited to, membership interests, shares of common stock, any stock rights, options, warrants, calls, subscriptions or other similar rights, agreements or commitments or other outstanding agreements obligating the Debtor to issue, transfer or sell any shares of any type of stock of the Debtor.

1.29    "Lien" shall have the meaning assigned to it in Section 101(37) of the Code.

1.30    "Mortgage" shall mean the leasehold mortgage and the accompanying supporting documents, and subsequent amendments thereto, entered into by the Debtor and Flagstar Bank on December 18, 2017.

1.31    "Maximum Amount" shall mean, with respect to any Disputed Claim: (a) the amount agreed to by the Debtor and the holder of such Claim; (b) the amount, if any, estimated or determined by the Bankruptcy Court in accordance with Section 502(c) or 503(b) of the Code; or (c) absent any such agreement, estimation or determination, the liquidated amount set forth in the proof of claim filed by the holder of such Claim, or if no amount is so set forth, the amount estimated by the Debtor.

1.32    "Parking Garage" shall mean the parking garage owned and operated by the

Debtor and located at 70 Little West Street, Condominium Unit D, New York, NY 10004.

1.33    "Person" shall have the meaning assigned to it in Section 101(41) of the Code.

1.34    "Petition Date" shall mean August 12, 2025.

1.35    "Plan" shall mean this Amended Chapter 11 Combined Disclosure Statement and Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with the provisions hereof and the Code.

1.36    "Plan Default" means the Debtor's (i) failure to satisfy any milestone or payment obligation set forth in the Flagstar Settlement Terms in Article X of this Plan, (ii) unauthorized use of cash collateral, (iii) failure to provide reporting required under the Third Interim Cash Collateral Order, or any subsequent Stipulation or Order authorizing the use of cash collateral, (iv) failure to make adequate protection payments to Flagstar, or (v) any new Event of Default under the Flagstar loan documents.

1.37    "Priority Unsecured Claim" shall mean a Claim, other than an Administrative Claim or a Priority Tax Claim, that is entitled to priority under Section 507(a) of the Code.

1.38    "Priority Tax Claim" shall mean a Claim that is entitled to priority treatment under Section 507(a)(8) of the Code.

1.39    "Professional" shall mean any attorney, accountant, appraiser, consultant and other professional retained or to be compensated pursuant to an order of the Bankruptcy Court pursuant to, inter alia, Section 327, 328, 330, 503(b) or 1103 of the Code in this Chapter 11 Case.

1.40    "Professional Fees" shall mean any claim for compensation and/or reimbursement of expenses under Section 330, 331 or 503(b) of the Code by any Professional retained by order of the Bankruptcy Court, which must be applied for in accordance with the Code and the Plan and Allowed by order of the Bankruptcy Court before payment thereof may be made.

1.41    "Property Sale" shall mean the proposed sale of the Parking Garage as described in more detail in Article X below. Such sale may be structured so that it qualifies under the exchange provisions of Section 1031 of the Internal Revenue Code of 1986, as amended (a "Like-Kind Exchange"). Purchaser agrees to cooperate with the Debtor by taking such actions as are reasonably required to effectuate such a Like-Kind Exchange, including, but not limited to (i) the execution of any and all documents, either in customary form used by a qualified intermediary, or subject to the reasonable approval of purchaser's counsel, as are requested in connection therewith; and (ii) the use of a qualified intermediary.

1.42    "Refinancing" shall mean any potential refinancing of the Parking Garage as described in more detail in Article X below.

1.43    "Rejection Damage Claim" shall mean any Claim arising from the rejection of any executory contract or unexpired lease in accordance with this Plan.

1.44    "Rejection Damages Bar Date" shall mean the date that is the first Business Day

that is at least thirty (30) calendar days after the Confirmation Date.

1.45    "Rules" shall mean, collectively, the Federal Rules of Bankruptcy Procedure recommended by the Judicial Conference of the United States and prescribed by the Supreme Court of the United States and all amendments thereto, and the local bankruptcy Rules for the Southern District of New York.

1.46    "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by Section 521 of the Code and Bankruptcy Rule 1007, and all amendments thereto.

1.47    "Unimpaired" shall mean any Class of Claims or Interests that is not Impaired.

1.48    "United States Trustee" shall mean any and all representatives of the Office of the United States Trustee for the Southern District of New York empowered to administer this Chapter 11 Case.

## ARTICLE II

### Summary

2.1    The Plan proposes to pay creditors of the Debtor from the proceeds generated via the Property Sale or Refinancing. The Debtor intends to use the proceeds from the Property Sale or Refinancing to satisfy all remaining Allowed Claims.

Non-priority unsecured creditors holding Allowed General Unsecured Claims will receive distributions, which the Debtor projects will be paid in full.  The Plan provides that the Debtor will make distributions for the payment in full of Administrative and Priority Tax claims before making any distributions to the Allowed Class 2 Claims.

All creditors should refer to Articles III through X of the Plan for information regarding the precise treatment of their claim.  In addition, to confirm this Plan, the Court must find that all creditors who do not accept this Plan will receive at least as much under this Plan as such claim holder would receive in a chapter 7 liquidation. To demonstrate this point, the Debtor will prepare a Liquidation Analysis, which will be filed in a supplement to the Plan, prior to any confirmation of the same.

## ARTICLE III

### Treatment of Administrative Claims

3.1    Administrative Claims. Administrative Claims are not classified under the Plan in accordance with Section 1123(a)(1) of the Code. Each Allowed Administrative Claim shall be paid in full in the Allowed amount of such Administrative Claim in Cash from the Debtor's assets either the later of: (i) within fifteen (15) Business Days after the date on which the

Bankruptcy Court enters an order allowing such Administrative Claim; (ii) on the Effective Date of the Plan; or (iii) upon such later date as the Debtor and the holder of such Allowed Administrative Claim otherwise agree in writing.

## ARTICLE IV

### **Treatment of Priority Tax Claims**

4.1     Priority Tax Claims.    Priority Tax Claims are not classified under the Plan in accordance with Section 1123(a)(1) of the Code.  Each holder of an Allowed Priority Tax Claim shall either be paid (i) in full in Cash on the date that is fifteen (15) days after the date on which the Bankruptcy Court enters an order allowing such Priority Tax Claim, or as soon thereafter as is practicable, (ii) on the Effective Date of the Plan; or (iii) upon such later date as the Debtor and the holder of such Allowed Priority Tax Claim otherwise agree in writing.   The estimated amount of Allowed Priority Tax Claims is $0.00.

## ARTICLE V

### **Classification of Claims and Interests**

5.1     Designation of Classes Pursuant to Sections 1122 and 1123(a)(1) of the Code.  Set forth in Section 5.3 below is the designation of Classes of Claims and Interests.   Administrative Claims and Priority Tax Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Code (set forth in Articles II and III above) have not been classified and are excluded from classification in accordance with Section 1123(a)(1) of the Code.

5.2     Allowed Amount in a Particular Class.  An Allowed Claim or Allowed Interest is part of a particular Class only to the extent of the amount of the Allowed Claim or Allowed Interest that qualifies for treatment within that Class and is in a different Class to the extent that the remaining amount of the Allowed Claim or Allowed Interest qualifies for treatment within that different Class.

5.3     Classes.   All Claims and Interests shall be divided into the following Classes for all purposes, including voting, confirmation and Distribution pursuant to the Plan, as follows, which Classes shall be mutually exclusive:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Flagstar Secured Claim | Impaired | Yes |
| Class 2 | General Unsecured Claims | Unimpaired | No |
| Class 3 | Interests | Impaired | No |

## ARTICLE VI

## Treatment of Claims and Interests

6.1    **Class 1:** Flagstar Secured Claim

(a)    Treatment. In accordance with and subject to the provisions of Section 10.2 below, the Flagstar Secured Claim shall be allowed in the amount of the outstanding principal balance of the Mortgage loan, together with all accrued and unpaid non-default interest, including accrued prepetition non-default interest, determined as of the date of payment in full.

(b)    Full Settlement.  The treatment and consideration to be received by the holder of the Class 1 Claim shall be in full and final satisfaction, release and discharge of its Class 1 Claim.

(c)    Class 1 is Impaired under the Plan.

6.2    **Class 2:** General Unsecured Claims.

(a)    Treatment. On or after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, one or more distributions on a pro rata basis, one hundred percent (100%) of such Allowed General Unsecured Claim, in full and final satisfaction of such Allowed General Unsecured Claim from the proceeds of the Property Sale, or such lesser treatment as to which the Debtor and the Holder of any such Allowed General Unsecured Claim shall have agreed upon in writing.  The estimated amount of Allowed General Unsecured Claims is $0.00.

(b)    Settlement.  The treatment and consideration to be received by the holders of Class 2 Claims shall be 100% of the amount of such Allowed General Unsecured Claim.

(c)    Class 2 is Unimpaired under the Plan.

6.3    **Class 3**: Interests.

(a)    Treatment. The Holder of Interests shall retain  one hundred percent (100%) of such Interests on or after the Effective Date in full and final satisfaction of such Interests from the proceeds of the Property Sale after satisfaction in full of all Allowed Claims, or such lesser treatment as to which the Debtor and the Holder of such Interests shall have agreed upon in writing.

10

(b)      Class 3 is Unimpaired under the Plan.


**Reservation of Rights Regarding Claims.**

Except as otherwise explicitly provided in the Plan, nothing shall affect, as applicable, the Debtor's rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoff or recoupment.

## ARTICLE VII

### Identification of Classes of Claims and Interests Impaired and Unimpaired Under the Plan

7.1      Voting of Class 1 Claims. Each holder of an Allowed Class 1 Claim shall be entitled to vote to accept or reject the Plan.

7.2      Acceptance by an Impaired Class of Claims.  Consistent with Section 1126(c) of the Code, and except as provided in Section 1126(e) of the Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

7.3      Class of Claims Unimpaired by this Plan is Conclusively Presumed to Accept this Plan.  Holders of Allowed Class 2 Claims are Unimpaired by the Plan.  Under Section 1126(f) of the Code, the holders of these Claims are conclusively presumed to accept the Plan, and the acceptances of holders of such Allowed Claims shall not be solicited.

7.4      Confirmation Pursuant to Section 1191 of the Bankruptcy Code ("Cram Down"). With respect to any Impaired Class that does not accept the Plan or is deemed to have rejected the Plan pursuant to Section 1126(f) of the Code, the Debtor intends to request that the Bankruptcy Court "cram down" any such Class(es) and confirm the Plan in accordance with Section 1191(b) of the Code.

## ARTICLE VIII

### Controversy with Respect to Impairment

8.1      In the event of a controversy as to whether a Class of Claims or Interests is Impaired, the Bankruptcy Court shall determine such controversy.

## ARTICLE IX

### Unexpired Leases and Executory Contracts

9.1     Assumption and Rejection of Executory Contracts and Unexpired Leases.

Except as otherwise provided herein or by prior order of the Bankruptcy Court, all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date pursuant to section 365(a) of the Bankruptcy Code.

Notwithstanding the foregoing, in connection with a Property Sale contemplated under this Plan, the Debtor shall assume and assign the Lease to the purchaser or its designee pursuant to sections 365(a) and 365(f) of the Bankruptcy Code. In connection with a Refinancing contemplated under this Plan, the Debtor shall assume the Lease pursuant to section 365(a) of the Bankruptcy Code.

The Confirmation Order shall constitute an order approving the rejection of all executory contracts and unexpired leases not otherwise assumed under the Plan and the assumption or assumption and assignment of the Lease, as applicable.

9.2     Bar Date for Rejection Damage Claims.     Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim with respect to an executory contract or unexpired lease rejected by the Debtor must be filed with the Bankruptcy Court on or before the Rejection Damages Bar Date and served upon (a) counsel to the Debtor, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Christopher Reilly; and (b) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014. Any Entity or Person that fails to file and serve its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtor, their estate, or any property or interests in property of the Debtor or their estate. All Allowed Rejection Damage Claims shall be classified as Class 2 Claims under the Plan.

## ARTICLE X

### Means for Implementing the Plan

10.1   Plan Funding.

(a)             As a condition to effectiveness of this Plan, the Debtor must close the Property Sale or Refinancing on or before November 30, 2026.

(b)             The Debtor is authorized to structure any Property Sale pursuant to the terms of a sale and purchase agreement. Such sale and purchase agreement may be structured so that it qualifies as a Like-Kind Exchange. Purchaser agrees to cooperate with Debtor by taking such actions as are reasonably required to effectuate such a Like-Kind Exchange, including but not limited to (i) the execution of any and all documents,

12

either in customary form used by a qualified intermediary, or, subject to the reasonable approval of purchaser's counsel, as are requested in connection therewith; and (ii) the use of a qualified intermediary

(c)        The Plan and the Distributions hereunder shall be funded by the net proceeds of the Property Sale or Refinancing.

10.2    Approval of Flagstar Settlement

(a)        In accordance with Section 1123(b) of the Bankruptcy Code and Rule 9019, the filing of the Plan shall constitute a motion for an order of the Bankruptcy Court approving, and the Confirmation Order shall constitute the Bankruptcy Court's approval of, the Debtor's entry into and performance under the Flagstar Settlement, the terms of which are described below, and the Debtor's taking all actions necessary or appropriate to consummate the transaction contemplated thereby, as fair and equitable and in the best interests of the Debtor's Estate. On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Flagstar Settlement and related agreements.

(b)    Flagstar Settlement Terms.

(i)        The Flagstar Secured Claim is allowed in the amount of the outstanding principal balance of the mortgage loan, together with all accrued and unpaid non-default interest, including accrued prepetition and post-petition non-default interest, returned check charges, COVID-19 deferment charges, appraisal fees, and reasonable attorneys' fees, calculated through the date of payment in full.

(ii)        Upon payment in full in cash of the Flagstar Secured Claim in accordance with this Plan, all late charges, default interest, and any other default-related charges shall be deemed waived.

(iii)        The Debtor shall repay the Flagstar Secured Claim in full on or before **November 30, 2026** (the "Outside Payment Date") through either:

- Refinancing of the Mortgage;

- Property Sale; or

- a combination thereof.

The Debtor shall pursue both Refinancing and Property Sale efforts simultaneously until payoff occurs.

(iv)        Until the Flagstar Secured Claim is paid in full, the Debtor shall continue to make monthly payments of non-default interest in accordance with the contract rate.

(v)        By **August 31, 2026**, the Debtor shall deliver to Flagstar either:

13

- a bona fide letter of intent for the purchase of the mortgaged property, or

- a signed commitment letter from a reputable third-party lender for refinancing.

(vi)     On or before November 30, 2026, the Flagstar Secured Claim shall be paid in full.

(vii)     Upon (i) payment in full of the Flagstar Secured Claim in accordance with this Plan and (ii) satisfaction of the milestones set forth herein, Flagstar shall release and waive any liability under the guaranty executed by Pamela Frost.

(viii)     On the Confirmation Date, counsel for the Debtor, Pamela Frost, and Flagstar in the foreclosure action pending in the Supreme Court of the State of New York, New York County, captioned, *Flagstar Bank, N.A., as successor by merger to New York Community Bank, v. Great Circle Park, LLC*, Index No. 850315/2025 (the "Foreclosure Action") shall execute a consent judgment of foreclosure and sale (the "Consent Judgment"), which shall be held in escrow by Flagstar's counsel and shall not be filed unless a Plan Default occurs and is not timely cured.

(ix)     Upon a Plan Default, Flagstar may file a Notice of Default with the Bankruptcy Court.  Unless the Debtor obtains a court order determining that good cause exists within ten (10) days after the filing of the Notice of Default: (I) the Bankruptcy Court shall enter an order terminating the automatic stay without further notice; and (II) Flagstar may proceed with the Foreclosure Action, including, but not limited to, resuming the receivership and filing and enforcing the Consent Judgment.

The Bankruptcy Court shall retain jurisdiction to determine whether good cause exists to prevent stay termination.

10.3 Property Sale or Refinancing. In order to maximize the value of the Debtor's estate and facilitate the Property Sale contemplated by this Plan, the Debtor shall market the Parking Garage and pursue a negotiated sale transaction with one or more prospective purchasers in a manner designed to maximize value for the benefit of the Debtor's estate and its creditors.

On and after the Confirmation Date, the Debtor shall be authorized, but not directed, to market and sell the Parking Garage pursuant to section 363 of the Bankruptcy Code and/or pursuant to the terms of this Plan, subject to the terms of the Flagstar Settlement.

The Debtor shall use commercially reasonable efforts to obtain, no later than August 31, 2026, either (i) a binding bona fide letter of intent or executed term sheet with a prospective purchaser of the Parking Garage or (ii) a refinancing term sheet from a reputable third-party lender or financing source (each, a "Term Sheet"). The Term Sheet shall set forth the material economic and structural terms of the proposed transaction, including, as applicable, purchase price or loan amount, deposit or commitment fee, due diligence period, financing conditions, and anticipated closing date.

14

The Debtor shall thereafter use commercially reasonable efforts to negotiate and execute a definitive purchase and sale agreement or refinancing agreement consistent with such Term Sheet and to consummate the resulting Property Sale or Refinancing no later than November 30, 2026 (the "Outside Closing Date"), subject to Bankruptcy Court approval and satisfaction of customary closing conditions.

The Property Sale shall be free and clear of all Claims, Liens, interests, and encumbrances of any kind or nature whatsoever, whether known or unknown, including, without limitation, any claims arising under successor or transferee liability theories, with such Claims and Liens attaching to the proceeds of the Property Sale in the same order of priority, validity, force, and effect as existed immediately prior to the closing of the Property Sale, subject to any defenses of the Debtor or the Estate.

The consummation of the Property Sale shall constitute a transfer under, pursuant to, and in furtherance of the Plan. The Confirmation Order shall provide that the sale, transfer, and delivery of any instruments of transfer, including any deed, shall not be subject to any Transfer Taxes pursuant to section 1146(a) of the Bankruptcy Code, as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.,* 128 S. Ct. 2326 (2008).

The Debtor is authorized to structure the Property Sale pursuant to the terms of the sale and purchase agreement so that it qualifies as a Like-Kind Exchange. Purchaser agrees to cooperate with Debtor by taking such actions as are reasonably required to effectuate such a Like-Kind Exchange, including but not limited to (i) the execution of any and all documents, either in customary form used by a qualified intermediary, or, subject to the reasonable approval of purchaser's counsel, as are requested in connection therewith; and (ii) the use of a qualified intermediary.

10.4    Execution of Documents.  The Debtor is authorized to execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan, including those related to the Property Sale or Refinancing, without further order or approval of the Bankruptcy Court. Pursuant to the Confirmation Order and upon confirmation of the Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and provisions of the Plan.  On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Plan and the other agreements referred to herein.

10.5    Recording of Documents.  Pursuant to Sections 105, 1141(c), 1142(b) and 1146(a) of the Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

10.6    Transfer Tax Exemptions. Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to any other Person pursuant to the Plan in the United States

15

shall not be subject to any stamp, real estate transfer, personal property, recording or other similar tax, and the Confirmation Order shall direct the appropriate state or local governmental official or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without payment of any such tax or governmental assessment.

10.7    Transactions on Business Days.  If the Effective Date or any other date on which a transaction or Distribution may occur under the Plan shall occur on a day that is not a Business Day, the transaction or Distribution contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

10.8    Preservation and Vesting of Claims, Rights, Demands and Causes of Action. Pursuant to Section 1123 of the Code, the Debtor shall be vested with, shall retain, and shall have the authority to prosecute and enforce any and all claims, controversies, agreements, promises, accounts, rights to legal remedies, rights to equitable remedies, rights, demands and Causes of Action of any kind or nature whatsoever held by, through or on behalf of the Debtor or its estate, including, without limitation, all Causes of Action of a trustee and debtor-in-possession under the Code, including, without limitation, under Sections 544, 545, 547, 548, and 549 of the Code and New York Debtor and Creditor Law, or other applicable law, against any other Entity or Person arising before or after the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not litigation with respect to same has been commenced prior to the Effective Date.

## ARTICLE XI

### Distributions; Disputed Claims Reserve

11.1    Timing of Distributions Due Under Plan.    All Distributions and payments required under the Plan to holders of Allowed Claims shall be paid as provided in Article VI of the Plan upon the closing of a Refinancing of the Mortgage and/or Property Sale.

11.2    Manner of Distributions.    At the option of the Debtor, Distributions may be made by check or such other method as the Debtor deems appropriate under the circumstances. No Distributions shall be required to be made to any holder of an Allowed Claim in an amount less than fifty ($50.00) dollars, unless request is made in writing to the Debtor.

11.3    Cash Payments.  Cash payments made pursuant to the Plan shall be in U.S. dollars. Cash payments made pursuant to the Plan in the form of checks issued by the Debtor shall be void if not cashed within one hundred twenty (120) days of the date of the issuance. Requests for reissuance of any check shall be made directly to the Debtor.

11.4    Administrative Expense Claims Bar Date. Persons asserting an Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after notice of the Effective Date has been mailed (the "Administrative Expense Claims Bar Date").  No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Expense Claim that fails to

16

file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment against the Debtor and its Estate.

11.5 Disputed Claims Reserve.

(a) The Debtor shall reserve for each Disputed Claim at the maximum amount. On the date of any Distribution, the Debtor shall deposit into the Disputed Claims Reserve Cash equal to the amount that would be distributable to all holders of Disputed Claims in respect of all Distributions made on that date, if such Disputed Claims were Allowed in the respective maximum amounts. The Debtor shall maintain the Disputed Claims Reserve in a segregated account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim. The Debtor shall pay any taxes due and owing with respect to the Disputed Claims Reserve, and reserve all Distributions on account of the Disputed Claims, net of such taxes; provided, however, that the Debtor may contest in good faith any tax that any taxing authority determines is owed by the Debtor.

(b) In the event any Disputed Claim becomes an Allowed Claim, the amount of such Allowed Claim shall never exceed the maximum amount, and the Debtor shall distribute to the holder of such Allowed Claim from the Disputed Claims Reserve the aggregate amount of Cash that such holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim has been an Allowed Claim as of the Effective Date.

(c) From time to time as Disputed Claims are Disallowed or Allowed in amounts less than their respective maximum amounts, the Cash deposited in the Disputed Claims Reserve that otherwise would have been distributed to the holders of such Disputed Claims if such Disputed Claims had become Allowed in their respective Maximum Amounts shall be released from and no longer held in the Disputed Claims Reserve and shall be distributed to the extent required in accordance with this Plan.

11.6 No Interest. Except with respect to holders of Unimpaired Claims entitled to interest under applicable non-bankruptcy law or as otherwise expressly provided herein, no holder of an Allowed Claim shall receive interest on any Distribution to which such holder is entitled hereunder, regardless of whether such Distribution is made on the Effective Date or thereafter.

11.7 Withholding of Taxes.

(a) The Debtor may withhold from any property to be distributed under the Plan any property which must be withheld for taxes payable by the Entity or Person entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Debtor may request that the holder of any Allowed Claim provide such holder's taxpayer identification number and such other certification or documentation as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b) Notwithstanding any other provision of the Plan, each Entity or Person receiving a Distribution of Cash pursuant to the Plan shall have sole and exclusive

responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

11.8 Undeliverable or Unclaimed Distributions.

(a) All Distributions under the Plan to any holder of an Allowed Claim shall be made at the address of such holder according to the Debtor's records, unless the Debtor has been notified in writing after the Effective Date of a change of address. Any Entity or Person that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Debtor for the amount of the original check, without any interest, if such Entity or Person (i) requests, in writing, the Debtor reissue such check, and (ii) provides the Debtor with such documentation as the Debtor requests to verify that such Entity or Person is entitled to such check. If an Entity or Person fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity or Person shall be deemed to have forfeited the amount of the Distribution provided for in such check. Any such forfeited Distributions shall revert to the Debtor's estate, and the Claim of any holder or successor to such holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

(b) In the event that any Distribution to any holder of an Allowed Claim is returned to the Debtor as undeliverable, no further Distributions shall be made to such holder unless and until the Debtor is notified in writing of such holder's then-current address. All claims for undeliverable Distributions for which no check is issued must be made within one hundred twenty (120) days of the issuance of the original check. After such date, all unclaimed Distributions shall revert to the Debtor's estate and the claim of any holder or successor to such holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary. Upon such forfeiture of Cash, such Cash shall be the property of the Debtor's estate.

11.9 Post-Effective Date Services by the Debtor's Professionals. The reasonable fees and expenses of the Debtor and its Professionals incurred after the Effective Date shall constitute Operating Expenses and shall be payable upon presentment of a monthly statement for services rendered and for reimbursement of expenses to the Debtor, counsel to Flagstar and to any claimed holder of an Interest at the addresses listed for such counsel in a Notice of Appearance filed in the Chapter 11 Case. The Debtor, Flagstar, and holders of Interests shall have ten (10) days from the receipt of any such fee and expense statements to dispute all or part of such statement. Upon the expiration of said ten (10) days, the Debtor shall pay the Professionals the undisputed portion of such fees and expenses. Any disputes shall be submitted by the objecting party in a motion to the Bankruptcy Court for determination within forty (40) days of receipt of the statement. In the event no submission is made to the Bankruptcy Court, the objection shall be deemed withdrawn.

## ARTICLE XII

## Procedures for Resolving Disputed Claims

12.1.   Objections to Claims.   Only the Debtor shall have the authority to file or litigate to judgment objections to Claims, settle and compromise claims pursuant to Section 9019 of the Code, and withdraw objections to Claims. Subject to an order of the Bankruptcy Court providing otherwise, the Debtor may object to a Claim by filing an objection with the Bankruptcy Court and serving such objection upon the holder of such Claim at any time up to thirty (30) days after the Effective Date or one hundred twenty (120) days after the filing of the proof of such Claim, whichever is later, or such other date fixed by the Bankruptcy Court, and to initiate contested matters and such other proceedings as may be necessary and appropriate for a determination of the Allowed Amount of such Claims. The Debtor shall be authorized to challenge, object to and/or settle such disputed Claims without having to seek approval from the Bankruptcy Court if such challenge, objection or settlement results in an Allowed Claim which is less than $75,000.

12.2.   Payments and Distributions with Respect to Disputed Claims.   No payments or Distributions shall be made in respect of any Disputed Claim until such Disputed Claim becomes an Allowed Claim. In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim at least fifteen (15) business days after such Claim is Allowed.

12.3.   Claims Reserve - Estimation.   For purposes of effectuating the reserve provisions of the Plan, and the allocations and Distributions to holders of Allowed Claims, the Bankruptcy Court may, on or prior to the Effective Date, or such later date as may be established by the Bankruptcy Court pursuant to Section 502 of the Code, fix or liquidate the amount of any contingent or unliquidated Claim, in which event the amount so fixed shall be deemed the Allowed Amount of such Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court shall determine the maximum contingent or unliquidated amount for such Claim, which amount shall be the Maximum Amount in which such Claim ultimately may be Allowed under the Plan, if such Claim is Allowed in whole or in part. The Bankruptcy Court's entry of the Confirmation Order or any such estimation order may limit the Distribution to be made on individual Disputed Claims, regardless of the amount finally Allowed on account of such Disputed Claims, and no holder shall have recourse against the Debtor's estate, the Debtor or its Professionals, professional consultants, attorneys, advisors, officers, directors, employees, members or their successors or assigns, or any of their property, as such holder's sole recovery shall be from the Distributions to be made to holders of Allowed Claims.

12.4.   Distributions After Allowance of Disputed Claims.   Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be at least fifteen (15) business days after such Claim is Allowed.

12.5.   Distributions After Disallowance of Disputed Claims.   Holders of Allowed Claims under the Plan that receive Distributions after Allowance of such holders' Claims may

19

receive subsequent Distributions if and to the extent that other Claims are disallowed or expunged or as property of the Debtor is converted to Cash. Such subsequent Distributions shall be included with the next Distributions due to be paid to holders of Allowed Claims pursuant to and in accordance with Article V of the Plan.

12.6.    Setoffs and Recoupments.    Except with respect to Causes of Action of any nature released or allowed pursuant to the Plan or Confirmation Order, the Debtor, or its designee as instructed by the Debtor, may, pursuant to Section 553 of the Code or applicable non-bankruptcy law, set off or recoup against any Allowed Claim or the Distributions to be made pursuant to the Plan on account of such Claim, any Causes of Action of any nature that the Debtor may hold against the holder of such Allowed Claim; provided that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or its respective successors, of any Causes of Action that the Debtor or its respective successors may possess against such holder.

## ARTICLE XIII

## Injunction, Release and Exculpation

13.1    Injunction.    Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtor that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Section 1141(d)(3) of the Code are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Debtor, its successors, its property or any other property that is to be distributed under the Plan or otherwise by the Debtor; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtor, its successors, its property or any other property to be distributed under the Plan or otherwise by the Debtor. On and after the Effective Date, each holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Debtor from implementing the Plan or the Confirmation Order.

13.2    Release.    Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all creditors of, Claim holders against, Interest holders of, and Entities having or claiming an interest of any nature in the Debtor or its estate are hereby permanently enjoined and stayed from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process, or any act against the Debtor, its successors, its property or any other property that is to be distributed under the Plan, on account of or based upon any right, claim or interest which any such creditor, Claimant, Interest holder, or other Entity or Person may have had prior to the entry of the Confirmation Order.

13.3    Exculpation.    Notwithstanding any other provision of the Plan, neither the Debtor nor its officers, directors, members, employees or other agents, financial advisors, attorneys,

20

accountants or Professionals shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Case, the property to be distributed under the Plan, or any of the transactions contemplated under the Plan, except for liability resulting from conduct constituting gross negligence, willful misconduct or breach of fiduciary duty as determined by a Final Order of the Bankruptcy Court.

## ARTICLE XIV

### Conditions Precedent to Confirmation and the Effective Date

14.1    Conditions Precedent to Confirmation of the Plan. The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Confirmation Date:

(a)    The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably satisfactory to the Debtor and shall contain provisions that, among other things, (i) authorize the implementation of the Plan in accordance with its terms, (ii) approve in all respects the transactions and agreements effected pursuant to the Plan; and (iii) find that the Plan complies with all applicable provisions of the Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud.

14.2    Conditions Precedent to the Effective Date.   The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Effective Date for the Plan to become effective:

(a)    the Confirmation Order shall have been entered by the Bankruptcy Court and shall have become a Final Order; and

(b)    the Property Sale or Refinance as contemplated by the Plan has been completed.

## ARTICLE XV

### Discharge; Limitation of Liability

15.1    Discharge in the case of Refinancing. Except as otherwise expressly provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with the Plan, pursuant to section 1141(d) of the Bankruptcy Code, the rights afforded herein and the treatment of all Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests against the Debtor or the Estate of any nature whatsoever, whether known or unknown, whether arising

before or after the Petition Date, including any interest accrued on such Claims from and after the Petition Date.

Upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims and Interests, including any debts that arose before the Confirmation Date, and any liability on such Claims shall be satisfied and discharged in full. The Confirmation Order shall constitute a judicial determination of the discharge of all such Claims and Interests, subject to the occurrence of the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, the discharge provided herein shall operate as an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover, or offset any discharged Claim against the Debtor or property of the Estate.

Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall:

(i) discharge or release any obligation of the Debtor arising under the Plan, the Confirmation Order, or any agreement or document entered into in connection with the Plan;

(ii) affect the liability of any entity other than the Debtor, except as expressly provided in the Plan; or

(iii) affect the treatment of Administrative Expense Claims, Professional Fee Claims, or Priority Tax Claims as provided in the Plan.

15.2 <u>No Discharge Upon Property Sale</u>. Pursuant to Section 1141(d)(3) of the Bankruptcy Code, in the case of a Property Sale, the Confirmation Order will not discharge any of the Debtor's debts.

15.3 <u>Continuation of Stays</u>. All stays provided for in the Chapter 11 Case under Section 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the completion of all payments required under the Plan.

**ARTICLE XVI**

**<u>Miscellaneous Provisions</u>**

16.1 <u>Bankruptcy Court to Retain Jurisdiction</u>. Notwithstanding entry of the Confirmation Order, the occurrence of the Effective Date, consummation of the Plan, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court shall have and retain jurisdiction of matters arising in or related to the Chapter 11 Case and the Plan under, and for the purposes of, Sections 105(a), 1127, 1142 and 1144 of the Code and for, among other things, the following purposes:

(a) To consider any modification of the Plan under Section 1127 of the Code and/or modification of the Plan before "substantial consummation" as defined in Section 1101(2) of the Code, and to consider any modification of the Plan to cure any defect or

22

omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order and any so-ordered stipulations with the landlords approved by the Bankruptcy Court during the pendency of the Chapter 11 Case.

(b) To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any, and allowance of Claims resulting therefrom.

(c) To (i) hear and determine any Claim or Cause of Action arising in or related to the Chapter 11 Case; and (ii) to adjudicate any Causes of Action or other proceedings currently pending or which may be commenced by the Debtor or otherwise referenced herein or elsewhere in the Plan, including, but not limited to, the adjudication of any Causes of Action and any and all "core proceedings" under 28 U.S.C. § 157(b), which are or may be pertinent to the Chapter 11 Case and which the Debtor may deem appropriate to commence and prosecute in support of implementation of the Plan.

(d) To determine any and all adversary proceedings, applications, and contested matters filed or commenced by the Debtor, including, without limitation, any Causes of Action.

(e) To ensure that Distributions are accomplished as provided in the Plan.

(f) To hear and determine any objections to Administrative Claims, to proofs of Claim, or to Claims and Interests filed and/or asserted both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any disputed Administrative Claim, Claim or Interest, in whole or in part, and any request for estimation of Claims.

(g) To protect the Debtor's estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property of the Debtor's estate based upon the terms and provisions of the Plan.

(h) To (i) enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated; (ii) to issue such orders in aid of execution of the Plan or other transactions contemplated hereunder as may be necessary and appropriate, to the extent authorized by Section 1142 of the Code; and (iii) to interpret and enforce any Orders previously entered in the Chapter 11 Case to the extent such Orders are not superseded or inconsistent with the Plan.

(i) To hear and determine all applications for compensation and reimbursement of expenses of Professionals under Sections 330, 331, and 503(b) of the Code for services rendered and expenses incurred prior or subsequent to the Confirmation Date.

(j) To hear and determine all litigation, Causes of Action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of the Plan, including but not limited to, any and all litigation and/or Causes of Action brought by the Debtor or any other party in interest, whether such litigation and/or

23

Causes of Action is/are commenced either prior to or after the Effective Date.

(k)   To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 345, 505, and 1146 of the Code.

(l)   To enter a Final Decree closing the Chapter 11 Case.

(m)   To consider and act on the compromise and settlement of any litigation, Claim against or Cause of Action asserted in connection with the Chapter 11 Case.

(n)   Without limiting the generality of the foregoing and notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Plan and administration of the Debtor's estate after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection herewith or therewith, including, without limitation, any Entities' obligations incurred in connection herewith or therewith, including without limitation, any action against the Debtor, the Professionals, and any action seeking turnover or recovery of assets included in the Debtor's estate.

16.2   <u>Binding Effect of the Plan.</u>   Nothing contained in the Plan shall limit the effect of confirmation as set forth in Section 1141 of the Code. The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, any holder of a Claim or Interest, and their respective predecessors, successors, assigns, agents, officers, managers, members and directors and any other Entity or Person affected by the Plan.

16.3   <u>Fractional Cents.</u>   Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

16.4   <u>Successors and Assigns.</u>   The rights and obligations of any Entity or Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity or Person.

16.5   <u>Blank Ballots.</u>   Any Ballot which is executed by the holder of an Allowed Claim, but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.   Any Ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

16.6   <u>Authorization of Corporate Action.</u>   Upon the entry of the Confirmation Order, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan). On the Confirmation Date, appropriate members or authorized signatories of the Debtor are authorized and directed to execute and to deliver any and all agreements, documents and instruments contemplated by the Plan or necessary for the consummation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without the need for any additional authorizations, approvals or consents.

24

16.7    Withdrawal of the Plan.   If the Confirmation Date does not occur, or if the Effective Date does not occur, then the Plan shall be deemed null and void and shall be of no effect and shall be deemed vacated, and the Chapter 11 Case shall continue as if the Plan had never been filed and, in such event, the rights of any holder of a Claim or Interest shall not be affected nor shall such holder be bound by, for purposes of illustration only, and without limitation, the Plan, any statement, admission, commitment, valuation or representation contained in the Plan, or the classification and proposed treatment (including any allowance) of any Claim in the Plan.

16.8    Captions.   Article and Section captions used in the Plan are for convenience only and shall not affect the construction of the Plan.

16.9    Method of Notice.   Unless expressly specified otherwise, any notice or other communication hereunder to the Debtor or its professionals shall be in writing (including by facsimile transmission or by e-mail) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letterbox (or, in the case of notice by facsimile transmission or e-mail, when received and telephonically or electronically confirmed), addressed to counsel to the Debtor as follows:

> Klestadt Winters Jureller Southard & Stevens, LLP
> Attention: Tracy L. Klestadt, Esq. and Christopher Reilly, Esq.
> 200 West 41st Street, 17th Floor
> New York, New York 10036
> Email: tklestadt@klestadt.com; creilly@klestadt.com

16.10   Amendments and Modifications to Plan.    Except for the Flagstar Settlement t in Article X of the Plan, the Plan may be altered, amended or modified from time to time by the Debtor, before or after the Confirmation Date, as provided in Section 1127 of the Code. Except for the Flagstar Settlement in Article X of the Plan, the Debtor may also seek to modify the Plan at any time after confirmation so long as (a) the Plan has not been substantially consummated, and (b) the Bankruptcy Court authorizes the proposed modification after notice and a hearing.

16.11 <u>Section 1125(e) of the Code.</u>  Confirmation of the Plan shall constitute a finding that the Debtor has proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code.

Dated:    New York, New York
          April 14, 2026

                                        **Great Circle Park LLC**


                            By:    */s/ Pamela Frost*
                                   Pamela Frost, Managing Member



Approved as to form:

By: */s/ Tracy L. Klestadt*
     Tracy L. Klestadt


Klestadt Winters Jureller Southard &
Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Counsel to the Debtor and Debtor-in-Possession*