**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>GREAT CIRCLE PARK LLC,<br><br>Debtor. | **NOT FOR PUBLICATION**<br><br>Case No. 25-11767 (MG)<br><br>Chapter 11 |

**MEMORANDUM OPINION AND ORDER CONDITIONALLY**
**APPROVING COMBINED DISCLOSURE STATEMENT AND CHAPTER**
**11 PLAN OF REORGANIZATION OF GREAT CIRCLE PARK LLC**

*A P P E A R A N C E S :*

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Attorneys for the Debtor*
200 West 41st Street, 17th Floor
New York, New York 10036
By:     Christopher J. Reilly, Esq.
          Tracy L. Klestadt, Esq.

WILLIAM K. HARRINGTON
*United States Trustee for Region 2*
*U.S. Department of Justice*
One Bowling Green
New York, New York 10707
By:     Daniel Rudewicz

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the Debtor's *Second Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization* (the "Plan," or "Second Amended Plan," ECF Doc. # 81), filed on May 28, 2026.  Attached to the Second Amended Plan, the Debtor filed a contemporaneous redline against the prior version (the "Redline," ECF Doc. # 81-1). The Debtor filed the Second Amended Plan after filing the *Combined Disclosure Statement and Chapter 11 Plan of Reorganization* (ECF Doc. # 68) on April 7, 2026 and the *Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization* (ECF Doc. # 70) on April 14,

2026.  No objections were filed.  The Debtor seeks conditional approval of the disclosure statement embodied in the Combined Plan and Disclosure Statement prior to solicitation and notice of the combined hearing.  The Court concludes that the Disclosure Statement is **APPROVED** and the Plan is **CONDITIONALLY APPROVED** subject to later voting.  The Debtor should distribute the Disclosure Statement and Plan for voting.

## I.   BACKGROUND

### A.  Chapter 11 Case and Debtor's Business

On August 12, 2025, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  (*See* the "First Cash Collateral Motion," ECF Doc. # 21 ¶ 3.)  The Debtor has continued in possession of its property and the management of its business affairs as debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.  (*Id.* ¶ 4.) No trustee, examiner or statutory committee has been appointed.  (*Id.* ¶ 5.)

The Debtor owns real property, a parking garage, located at 70 Little West Street, Condominium Unit D, New York, NY 10004 ("the Property" or the "Parking Garage").  (*Id.* ¶ 7.) The Debtor leases the Property to MP Battery 70 LLP, an entity that operates the parking garage. (*Id.*)  The Debtor has no operations or business other than its business relating to the leasing of the Parking Garage.  (*Id.* ¶ 8.)  The Debtor and MP Battery 70 LLP are parties to a lease agreement that is due to expire on April 30, 2029.  (*Id.* ¶ 9.)

### B.  The Flagstar Loan

On December 18, 2017, the Debtor entered into a loan agreement with Flagstar Bank, N.A., as successor by merger to New York Community Bank ("Flagstar" or "Lender"), in the original principal amount of $4,500,000 (the "Loan").  (*Id.* ¶ 10.)  To evidence the Loan, the Debtor

executed that certain Amended and Restated Mortgage Note in favor of Flagstar in the principal amount of $4,500,000 (the "Note"). (*Id.*)

On the same date, and to secure the Loan, the Debtor and Flagstar entered into the Leasehold Consolidation, Modification and Extension Agreement, wherein the Debtor agreed to assume all of the obligations and agreements of the notes and mortgages, deeds of trust or other security instruments (the "Mortgage"). (*Id.* ¶ 11.) The Mortgage encumbers the Property, and its maturity date is January 1, 2028. (*Id.*)

In connection with the Loan, the Debtor executed that certain Collateral Assignment of Leases and Rentals (the "ALR") and that certain Security Agreement (the "Security Agreement"). (*Id.* ¶ 12.) The current balance of the Loan is $4,008,596.39. (*Id.*)

As a result of the Loan, Note, Mortgage, ALR and Security Agreement, the Lender asserts that it holds security interests in, and liens on (the "Prepetition Liens") all of the Debtor's real and personal property and fixtures, in each case whether then or thereinafter existing or then owned or thereafter acquired and whether subject to the Uniform Commercial Code including, but not limited to, all goods, money, contract rights, instruments, accounts, farm products, inventory, equipment, documents, chattel paper, securities and general intangibles and all interest, dividends and other distributions paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of all of the foregoing (collectively, the "Prepetition Collateral"). (*Id.* ¶ 13.) Prepetition Collateral is intended to include any cash collateral as that term is defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral"). (*Id.*)

On July 21, 2025, Flagstar commenced an action in the Supreme Court of the State of New York, New York County, seeking to foreclose the Mortgage and to appoint a rent receiver. (*Id.* ¶

3

14.)  On August 6, 2025, the Supreme Court entered an order appointing Shannon W. Hill (the "Receiver") as temporary receiver of the rents and profits generated by the Parking Garage.  (*Id.*)  The Debtor, however, filed its bankruptcy petition before the Receiver took possession of the Parking Garage.  (*Id.*)

### C.  Cash Collateral

As of the Petition Date, Flagstar asserted an outstanding balance of not less than $4,008,596.39, plus accrued interest, fees, and other amounts allowable under section 506(b) of the Bankruptcy Code.  (Plan at 1.)  Because substantially all of the Debtor's revenues constitute cash collateral, the Debtor was required to obtain Flagstar's consent or Court authorization to use such funds in the ordinary course.  (*Id.*)  Following good faith, arm's-length negotiations, the Debtor and Flagstar entered into four successive interim cash collateral stipulations, each approved by the Bankruptcy Court.  Most recently, on April 27, 2026, the Bankruptcy Court entered the *Fourth Stipulation and Order Authorizing Interim Use of Cash Collateral and Granting Adequate Protection* (the "Fourth Interim Cash Collateral Order," ECF Doc. # 75).  The Fourth Interim Cash Collateral Stipulation covers the period through July 23, 2026, or upon the occurrence of an Event of Default.  ECF Doc. # 73 at 6.)  The Fourth Interim Cash Collateral Order authorized the Debtor to use cash collateral pursuant to an agreed budget, subject to a monthly cap and reporting requirements, and requires the Debtor to make monthly non-default interest payments to Flagstar as adequate protection.  (Plan at 2.)  The interim cash collateral arrangements have permitted the Debtor to continue operations and preserve the value of its property while pursuing restructuring alternatives in this Chapter 11 Case.  (*Id.*)

**D. Exclusivity**

On November 10, 2025, the Debtor filed its *Motion for Entry of an Order Extending Exclusive Periods During Which Debtor May File a Plan and Solicit Acceptances Thereof* (the "Exclusivity Motion, ECF Doc. # 40). In the Exclusivity Motion, the Debtor sought an extension of the 120-day period during which it has the exclusive right to file a chapter 11 plan and the 180-day period during which it may solicit acceptances thereof (the "Exclusive Periods"). (Plan at 2.) The Debtor requested a 120-day extension of each period in order to permit it sufficient time to (i) continue negotiations with its operating tenant, MP Battery, regarding the acquisition of such tenant's interest and the assumption of direct management of the Debtor's sole asset, the Parking Garage; (ii) evaluate strategic alternatives, including a refinancing of its existing mortgage indebtedness or a sale of the Parking Garage; and (iii) establish a bar date and obtain clarity regarding the universe of claims against the estate. (*Id.*) The Debtor further represented that it had commenced making monthly non-default interest payments to its secured lender in accordance with section 362(d)(3) of the Bankruptcy Code, had timely filed its operating reports, and was making good faith progress toward formulation of a viable chapter 11 plan. (*Id.*) By Order entered December 10, 2025, the Bankruptcy Court granted the Exclusivity Motion and extended the Debtor's exclusive period to file a chapter 11 plan through and including April 9, 2026, and the exclusive period to solicit acceptances thereof through and including June 8, 2026. (*Id.*) The Court's Order was entered without prejudice to the Debtor's right to seek further extensions of the Exclusive Periods, if necessary. (*Id.*)

**E. MP Battery 70 LLC**

The Debtor and MP Battery are parties to a lease dated April 30, 2019 (the "Lease") for the Parking Garage, with a term running from May 1, 2019 through April 30, 2029. (*Id.*) Under

5

the Lease, MP Battery is required to operate and maintain the Parking Garage and to pay escalating fixed rent commencing at approximately $600,000 per year, together with additional rent. (*Id.*) Prior to the Petition Date, a dispute arose regarding alleged late payments of rent by MP Battery between September 1, 2024 and September 2, 2025, which the Debtor asserted resulted in the accrual of late fees totaling approximately $73,839.30. (*Id.* at 3.) The Debtor and MP Battery agreed to resolve the dispute pursuant to a settlement under which MP Battery will pay the Debtor $50,979.37 in full and final satisfaction of the alleged late fee obligations. (*Id.*) The settlement does not otherwise modify the terms of the Lease, and MP Battery will continue to perform its obligations thereunder, including the timely payment of rent. (*Id.*)

**F.  Retention of Marcus & Millichap**

On April 28 2026, the Debtor filed an *Application to Employ Marcus & Millichap Real Estate Investment Services, Inc. as Debtor's Real Estate Broker* (the "Marcus Retention Application," ECF Doc. # 76.) Marcus is a nationally recognized brokerage firm with substantial experience in the marketing and sale of commercial real estate assets, including properties similar to the Parking Garage. (Plan at 3.)  Marcus is responsible for sale and/or refinancing efforts (*Id.*)  As compensation, Marcus is entitled to a commission equal to four percent of the gross purchase price in connection with a sale, or four percent of the gross loan amount in connection with a refinancing, in each case payable solely upon the closing of such transaction, together with a modest marketing budget. (*Id.*) The Debtor believes that the retention of Marcus on these terms is reasonable, market-based, and in the best interests of the estate, as it is designed to maximize value for creditors through a competitive sale or refinancing process. (*Id.*)

**G. Flagstar 2004 Investigation**

The Rule 2004 process has been completed without incident, and the Debtor complied with Flagstar's investigative requests in full. (Plan at 4.)

**H. Overview of the Amended Plan**

1. Generally

The Plan, which contemplates a Property Sale or Refinancing, classifies holders of claims and interests into three classes. (Plan § 5.3.) Only Class 1 (Flagstar Secured Claims) is impaired and entitled to vote on the Plan. (*Id.* §§ 6.1-6.3.) The Debtor seeks conditional approval of the disclosure statement embodied in the Combined Plan and Disclosure Statement prior to solicitation and notice of the combined hearing. (*See* the "Reilly Letter," ECF Doc. # 77 at 2.) The Plan provides for non-priority unsecured creditors holding Allowed General Unsecured Claims to receive distributions, which the Debtor projects will be paid in full. (Plan § 2.1.)

2. Proposed Classification of Claims and Interests

The Plan proposes to classify claims and interests in the following manner:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Flagstar Secured Claim | Impaired | Yes |
| Class 2 | General Unsecured Claims | Unimpaired | No |
| Class 3 | Interests | Impaired | No |

(*Id.* § 5.3.). The Plan also details the treatment of administrative expenses and other unclassified claims, including claims for professional fees and priority tax claims. (*Id.* §§ 3.1, 4.1, 11.9.)

3. <u>Means for Implementation</u>

a. *Plan Funding*

As a condition to the effectiveness of the Plan, the Debtor must close the Property Sale or Refinancing on or before November 30, 2026. (*Id.* § 10.1.) Specifically, the Debtor is authorized to structure any Property Sale pursuant to the terms of a sale and purchase agreement and the sale and purchase agreement may be structured so that it qualifies as a Like-Kind Exchange (*Id.*)

b. *The Flagstar Settlement*

In addition to the Property Sale or Refinancing, the filing of the Plan constitutes a motion for an order approving a settlement (the "Flagstar Settlement") that provides for, among other things:

- The Flagstar Secured Claim is allowed in the amount of the outstanding principal balance of the mortgage loan, together with all accrued and unpaid non-default interest, including accrued prepetition and post-petition non-default interest, returned check charges, COVID-19 deferment charges, appraisal fees, and reasonable attorneys' fees, calculated through the date of payment in full.

- Waiver of late charges, default interest, and any other default-related charges.

- Repayment on or before November 30, 2026 (the "Outside Payment Date") through Refinancing of the Mortgage, a Property Sale, or a combination thereof.

- The Debtor shall pursue both Refinancing and Property Sale efforts simultaneously until payoff occurs.

- Until the Flagstar Secured Claim is paid in full, the Debtor shall continue to make monthly payments of non-default interest in accordance with the contract rate.

- By August 31, 2026, the Debtor shall deliver to Flagstar either a bona fide letter of intent for the purchase of the mortgaged property, or a signed commitment letter from a reputable third-party lender for refinancing.

- Flagstar shall release and waive any liability under the guaranty executed by Pamela Frost.

- On the Confirmation Date, counsel for the Debtor, Pamela Frost, and Flagstar in the foreclosure action pending in the Supreme Court of the State of New York, New York County, captioned, *Flagstar Bank, N.A., as successor by merger to New York Community Bank, v. Great Circle Park, LLC*, Index No. 850315/2025

8

(the "Foreclosure Action"), shall execute a consent judgment of foreclosure and sale (the "Consent Judgment"), which shall be held in escrow by Flagstar's counsel and shall not be filed unless a Plan Default occurs and is not timely cured.

(*Id.* § 10.2(b).)

### c. Property Sale or Refinancing

The Debtor will market the Parking Garage and pursue a negotiated sale transaction with one or more prospective purchasers in a manner designed to maximize value for the benefit of the Debtor's estate and its creditors. (*Id.* § 10.3.) On and after the Confirmation Date, the Debtor shall be authorized, but not directed, to market and sell the Parking Garage pursuant to section 363 of the Bankruptcy Code and/or pursuant to the terms of this Plan, subject to the terms of the Flagstar Settlement. (*Id.*) The Debtor shall thereafter use commercially reasonable efforts to negotiate and execute a definitive purchase and sale agreement or refinancing agreement consistent with such Term Sheet and to consummate the resulting Property Sale or Refinancing no later than November 30, 2026 (the "Outside Closing Date"), subject to Bankruptcy Court approval and satisfaction of customary closing conditions. (*Id.*) The Property Sale shall be free and clear of all Claims, Liens, interests, and encumbrances of any kind or nature whatsoever. (*Id.*) The Debtor is authorized to structure the Property Sale pursuant to the terms of the sale and purchase agreement so that it qualifies as a Like-Kind Exchange. (*Id.*)

## II. ADEQUACY OF THE DISCLOSURE STATEMENT

### A. Legal Standard

Section 1125 of the Bankruptcy Code provides that a proponent of a proposed Chapter 11 plan must provide "adequate information" the plan to holders of impaired claims and interests entitled to vote. 11 U.S.C. § 1125. Specifically, section 1125(a)(1) of the Bankruptcy Code states, in relevant part, that:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1). Accordingly, a disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995) (stating that the adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties) (internal citation omitted).

Generally, "adequate information" is a flexible standard, based on the facts and circumstances of each case. *See e.g., Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) (indicating that the legislative history to section 1125(a) makes clear that "what constitutes adequate information in any particular instance will develop on a case-by-case basis") (quoting H.R. REP. NO. 595, at 408–09 (1977)); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (noting that the adequacy of a disclosure statement is to be "determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties."). Moreover, determination of what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code falls within the broad discretion of a court. *See In re*

10

*WorldCom, Inc.,* No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. Jun. 30, 2003) (stating

that "[t]he determination of what is adequate information is subjective and made on a case by

case basis. This determination is largely within the discretion of the bankruptcy court.") (quoting

*Ionosphere Clubs*, 179 B.R. at 29); *Kirk*, 82 B.R. at 682 (stating that "[t]he legislative history

could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a)").

Accordingly, in determining whether a disclosure statement contains adequate

information, courts will look to whether a disclosure statement contains disclosures with respect

to the following:

- the events and circumstances that gave rise to the filing of the bankruptcy petition;

- a complete description of the available assets and their value;

- the anticipated future of the debtor;

- the source of the information provided in the disclosure statement;

- a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

- the financial condition and performance of the debtor while in chapter 11;

- information regarding claims against the debtor's estate;

- a liquidation analysis identifying the estimated return that creditors would receive if the debtor's bankruptcy case were a case under chapter 7 of the Bankruptcy Code;

- the accounting and valuation methods used to produce the financial information in the disclosure statement;

- information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

- a summary of the plan of reorganization;

- an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

- the collectability of any accounts receivable;

- any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan of reorganization;

11

- information relevant to the risks being taken by the creditors and interest holders;

- the actual or projected value that could be obtained from avoidable transfers;

- the existence, likelihood and possible success of nonbankruptcy litigation;

- the tax consequences of the plan of reorganization; and

- the relationship of the debtor with its affiliates.

*See, e.g., In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (specifying the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.* 39 B.R. 567, 568 (Bankr. N.D. G.a. 1984) (same); *see also Copy Crafters Quickprint*, 92 B.R. at 980 (evaluating the adequacy of a disclosure statement in light of the factors articulated in *Scioto Valley Mortgage*).

Matters to be addressed at a hearing on the adequacy of a disclosure statement should be limited to disclosure issues. Accordingly, any issues raised that are functionally premature plan objections are more appropriately evaluated at a hearing on confirmation. *See, e.g.*, 7 COLLIER ON BANKRUPTCY § 1125.03 (16th ed. 2023) ("At disclosure statement hearings, courts should refuse to hear issues that are confirmation rather than disclosure issues, such as classification of claims, feasibility . . . or whether a plan is fair and equitable."); *In re Foxwood Hills Prop. Owners Ass'n, Inc.*, No. CV 20-02092-HB, 2021 WL 3059716, at *5 (Bankr. D.S.C. June 1, 2021) (same). Indeed, disputed issues related to confirmation are not relevant to assessing whether a disclosure statement contains "adequate information." *See, e.g., In re Quigley Co., Inc.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the disclosure statement while acknowledging that settlements with the debtors' non-debtor former parent "implicate several confirmation issues"); *In re Hyatt*, 509 B.R. 707, 711 (Bankr. D.N.M. 2014) (approving the disclosure statement because questions about the debtor's proposed classification scheme "require[d] additional evidence that may be presented at a confirmation hearing" and, therefore,

12

the "proposed classification scheme does not render the [p]lan patently unconfirmable as a matter of law.").

The only time a court may entertain plan objections at a disclosure statement hearing is when any subsequent solicitation would be futile because the proposed plan is "patently unconfirmable." *See In re Quigley Co., Inc*., 377 B.R. at 119 ("For present purposes, the application to approve the disclosure statement is granted since it contains 'adequate information,' and does not describe a plan that is unconfirmable as a matter of law.").

## B. Discussion

The Disclosure Statement, which was filed combined with the Plan, is comprehensive and informative and contains information necessary for impaired creditors to make an "informed judgment" about the Plan. *See* 11 U.S.C. § 1125 (requiring a chapter 11 plan proponent to provide "adequate information" regarding a plan to holders of impaired claims and interests entitled to vote.) As set forth therein, only impaired class 1 is entitled to vote. Critical to this chapter 11 case is whether each class of impaired claim holders can make an informed decision regarding whether to vote in favor or against the Plan. *See Kirk*, 82 B.R. at 682 (indicating that "adequate information" is to be determined on a case-by-case basis).

The Disclosure Statement includes, among other things, an overview of the Debtor's operations and capital structure, key events leading up to and during the commencement of the Debtor's chapter 11 case, and a summary of the Plan and the proposed Refinancing or Property Sale. (*See generally* Plan.) Notably, the Debtor has not yet provided chapter 7 liquidation analysis. (Plan at 8) (*"the Debtor will prepare a Liquidation Analysis, which will be filed in a supplement to the Plan, prior to any confirmation of the same."*).

The MP Settlement ensures the continued operation of the Parking Garage and continued rent payments, which are the Debtor's source of income. (Plan at 2.) Property Sale or

13

Refinancing will appropriately settle the Flagstar Loan.  Additionally, the Fourth Interim Cash

Collateral Stipulation covers the period through July 23, 2026 or the occurrence of an Event of

Default.  (Fourth Interim Cash Collateral Stipulation ¶ 5.)  Given the Debtor is a single-asset

Parking Garage, the financial condition and future management are sufficiently clear and

financial projections are unnecessary.  However, Liquidation Analysis should be provided ahead

of final confirmation.

The Debtor noted that it had "engaged in discussions with Flagstar regarding the terms of

a chapter 11 plan, and the Debtor anticipates that the Combined Plan and Disclosure Statement

will be supported by Flagstar" (*See* "Reilly Letter," ECF Doc. # 77.)  .  The Disclosure Statement

appears to satisfy the requirements of section 1125.  Accordingly, the Court **APPROVES** the

Disclosure Statement.

### III.    DISCUSSION – CONFIRMATION OF THE PLAN

To obtain confirmation of a plan of reorganization, a plan proponent must establish by a

preponderance of the evidence that the plan has satisfied the requirements set forth under section

1129 of the Bankruptcy Code.  *See JPMorgan Chase Bank, N.A. v. Charter Commc'ns*

*Operating, LLC (In re Charter Commc'ns, Inc.)*, 419 B.R. 221, 244 (Bankr. S.D.N.Y. 2009)

(finding that the plan proponent bears the burden of establishing compliance with the factors set

forth in section 1129 by a preponderance of the evidence); *see also In re Young Broad. Inc.*, 430

B.R. 99, 128 (Bankr. S.D.N.Y. 2010) (same).

### A. Section 1129(a)(1)

Section 1129(a)(1) requires that the Plan comply with applicable provisions of the

Bankruptcy Code.  11 U.S.C. § 1129(a)(1).  The Plan, therefore, must satisfy sections 1122 and

1123 of the Bankruptcy Code.  *In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In

14

determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization.").

### 1. Section 1122: Meets Requirements

Section 1122 governs the classification of claims in plans.  Section 1122 states:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Claims or interests may only be placed in a particular class if such claims or interests are "substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  "A plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is a reasonable basis for the classification scheme and if all claims within a particular class are substantially similar."  *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992); *see also Aetna Cas. & Sur. Co. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason.").

Here, the Plan provides for three classes of claims – the Flagstar secured claim, general unsecured claims, and interests.  (Plan § 5.3.)  The classification scheme is reasonable and does not appear to have been created for any improper purpose nor unfairly discriminate among

15

holders of claims and interests.  Accordingly, the Plan **MEETS** the requirements of section 1122.

### 2. Section 1123(a): Meets Requirements

A plan must fulfill the following eight requirements to satisfy section 1123(a):

(1)  designate classes of claims and interests, other than claims of a kind specified in section 507(a)(2) (administrative expense claims), 507(a)(3) (involuntary gap claims), or 507(a)(8) (unsecured tax and custom duties claims);

(2)  specify unimpaired classes of claims and interests;

(3)  specify treatment of impaired classes of claims and interests;

(4)  provide for equality of treatment within each class (unless the holder of a claim or interest agrees to less favorable treatment);

(5)  provide adequate means for the plan's implementation;

(6)  if the debtor is a corporation, provide for the inclusion in the charter of the debtor a prohibition on the issuance of non-voting equity securities, and provide an appropriate distribution of voting power among the classes of securities;

(7)  contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors; and

(8)  in a case in which the debtor is an individual, provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan.

As required by sections 1123(a)(1)–(3), the Plan designates the classes of claims and interests, specifies whether each is impaired as well as the treatment within each class. Accordingly, subsections (1)–(3) are satisfied.

Unless holders of claims agree to otherwise, the Plan provides for identical treatment for all claims within each class.  Accordingly, section 1123(a)(4) is satisfied.

With respect to section 1123(a)(5), the Plan provides for mechanisms for its implementation, including the Property Sale or Refinancing.  Accordingly, the requirements of 1123(a)(5) are satisfied.

Section 1123(a)(6) is not applicable, as the Plan does not contemplate the issuance of new membership or equity interests in the Debtor.

Section 1123(a)(7) is not applicable, as the Plan does not contemplate the selection of the reorganized company's officers and directors.

Finally, Section 1123(a)(8) does not apply as the Debtor is not an individual.

Accordingly, the Plan **MEETS** the requirements of section 1123(a).

### 3. Section 1123(b): Meets Requirements

Section 1123(b) of the Bankruptcy Code sets forth provisions that may be incorporated into a chapter 11 plan subject to the requirements of section 1123(a).  Each of the relevant non-mandatory provisions of the Plan are consistent with section 1123(b) of the Bankruptcy Code. The Plan **MEETS** the relevant provisions of section 1123(b).

#### a.  Section 1123(b)(1)

Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests."  11 U.S.C. § 1123(b)(1).  The Plan provides that Class 1 of Creditors, the Flagstar Secured Claim, is impaired.  (*See* Plan § 6.1)

#### b.  Section 1123(b)(2)

Section 1123(b)(2) provides that, "subject to section 365 . . . [a plan may] provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section."  Here, Article 9 of the Plan provides for the rejection

of executory contracts and unexpired leases the Debtors are party to unless previously assumed or otherwise provided for in the Plan.  (*Id.*, § 9.)

c.   *Section 1123(b)(3)*

Section 1123(b)(3) permits a plan to provide for "(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest."  11 U.S.C. § 1123(b)(3).  Here, section 10.2 of the Plan provides that "the filing of the Plan shall constitute a motion for an order of the Bankruptcy Court approving, and the Confirmation Order shall constitute the Bankruptcy Court's approval of, the Debtor's entry into and performance under the Flagstar Settlement."  (*See* Plan § 10.2.)  Additionally, section 10.8 preserves the Reorganized Debtors' right to enforce any claims, rights, or Causes of Action that the Debtors may hold against any person or entity, except those explicitly released under the Plan.  (*Id.* § 10.8.)

d.   *Section 1123(b)(4)*

Section 1123(b)(4) allows a plan to "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."  11 U.S.C. § 1123(b)(5).  Here, Section 10.1 provides for the Property Sale or Refinancing as condition to effectiveness of the Plan.  (*See* Plan § 10.1.)

**B.  Section 1129(a)(2)**

Under section 1129(a)(2), the plan proponent must comply "with the applicable provisions" of the Bankruptcy Code.  11 U.S.C. § 1129(a)(2).  Courts have interpreted the section 1129(a)(2) requirement to include satisfaction of the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.  *In re WorldCom, Inc.*, No. 02-

13533(AJG), 2003 WL 23861928, at **25–26 (Bankr. S.D.N.Y. Oct. 31, 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986).

### 1. Section 1125: Meets Requirements

Section 1125 of the Bankruptcy Code provides:

> (b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.
>
> (c) The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes.

11 U.S.C. § 1125.

The Debtor seeks approval of the Disclosure Statement as part of the Combined Plan. The Court concludes that the Disclosure Statement contains adequate information and satisfies section 1125.

### 2. Section 1126: To Be Determined

Section 1126 indicates that a holder of a claim or interest may accept or reject a plan, outlines the classes entitled to vote on proposed plans, and describes how it is determined whether a class of claims or interests either accepts or rejects a plan. "A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c). "Only creditors that actually voted count in determining whether the requisite majorities in number and amount are met." 7

COLLIER ON BANKRUPTCY § 1126.04. "[A] class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation . . . is not required." 11 U.S.C. § 1126(f).

Only Flagstar is impaired under the Plan and is entitled to vote. The Debtor intends to seek conditional approval of the disclosure statement embodied in the Combined Plan and Disclosure Statement prior to solicitation and notice of the combined hearing. (Reilly Letter at 2.) As such, whether the Plan meets the requirements of section 1126(c) is **TO BE DETERMINED**.

### C. Section 1129(a)(3): Meets Requirements

Section 1129(a)(3) requires the plan to be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). This means that the plan must have been "proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988). Courts have held that a plan is considered proposed in good faith "if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code." *In re The Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988)). "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan." *Leslie Fay*, 207 B.R. at 781 (citations omitted); *Greer v. Gaston & Snow (In re Gaston & Snow)*, 1996 WL 694421, at *9 (S.D.N.Y. Dec. 4, 1996) ("failure to propose a plan in good faith occurs when the Plan is not proposed with honesty, good intentions, and to effectuate the reorganization of the enterprise, but rather for some other motive") (citing *Kane*, 843 F.2d at 649).

20

Here, the Plan appears to have been proposed in good faith, which is defined to be with "honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Johns-Manville*, 843 F.2d at 649. The Debtor outlines a process of arms-length, good-faith negotiations with Flagstar. (Plan at 2.) There is nothing to suggest otherwise, and no one has objected to the Plan on this basis.

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(3).

### D. Section 1129(a)(4): Meets Requirements

Section 1129(a)(4) mandates that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

This requires a plan to provide for the disclosure and Court approval of payment of any fees promised or received in connection with the chapter 11 case. *See* 7 COLLIER ON BANKRUPTCY § 1129.03[4].

Here, the Plan provides that Professionals shall be required to present a monthly statement for services rendered and for reimbursement of expenses to the Debtor, counsel to Flagstar and to any claimed holder of an Interest at the addresses listed for such counsel in a Notice of Appearance filed in the Chapter 11 Case. (Plan § 11.9.) The Debtor, Flagstar, and holders of Interests shall have ten days from the receipt of any such fee and expense statements to dispute all or part of such statement. (*Id.*) Upon the expiration of said ten days, the Debtor shall pay the Professionals the undisputed portion of such fees and expenses. (*Id.*) In other words, professional fees and expenses may only be paid after application to and approval by the Court. Accordingly, the Plan **MEETS** the requirements of section 1129(a)(4).

**E. Section 1129(a)(5): Meets Requirements**

Section 1129(a)(5) requires that:

(A)

(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

11 U.S.C. § 1129(a)(5). Few cases discuss what it means for an appointment to be "consistent with public policy." 7 COLLIER ON BANKRUPTCY § 1129.03[5][b]. To fail this requirement, either bad faith or incompetence of current management must be demonstrated. *See In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 150 (Bankr. S.D.N.Y. 1984).

Here, Pamela Frost, the current Managing Member, has signed the Plan. The Plan does not provide for the appointment of additional officers. As such, the Plan **MEETS** the requirements of section 1129(a)(5).

**F. Section 1129(a)(6): Inapplicable**

Under section 1129(a)(6), if the plan provides for changes in rates controlled by governmental agencies, the rate change must have been pre-approved by the relevant agency. 7 COLLIER ON BANKRUPTCY § 1129.03[6]. This requirement applies to debtors who are "utilities or other entities whose ability to price their products or services are subject to regulation by governmental agencies." *Id*.

22

As this does not apply to the Debtor, Section 1129(a)(6) is **INAPPLICABLE**. (*See* Confirmation Brief § 84.)

### G. Section 1129(a)(7): To Be Determined

Section 1129(a)(7)—the so-called "best-interests" requirement—mandates that each creditor or interest holder impaired under a plan must either have (i) accepted the plan, or (ii) would receive at least as much under the plan as it would under a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7); 7 COLLIER ON BANKRUPTCY § 1129.03[7]. To satisfy this second prong, parties will often submit estimates regarding the liquidation value of the company. These valuations are estimates, "designed to reach a calculated decision on the basis of the hypotheses and assumptions in light of a set of facts." *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).

> Section 1129(a)(7) operates on the individual creditor or interest holder level. . . . With respect to *each member*, section 1129(a)(7)(A) requires that the member either accept the plan, or will "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount such holder would so receive or retain if the debtor liquidated under chapter 7 of this title on such date."

7 COLLIER ON BANKRUPTCY § 1129.02[7][b] (emphasis added).

Here, Class 1, the Flagstar Secured Claim, is impaired. The Debtor seeks conditional approval of the disclosure statement embodied in the Combined Plan and Disclosure Statement prior to solicitation and notice of the combined hearing. (Reilly Letter at 2.) The Debtor has not provided a Liquidation Analysis. Accordingly, whether the Plan meets the requirements of section 1129(a)(7) is **TO BE DETERMINED**.

23

**H.  Section 1129(a)(8): To Be Determined**

Pursuant to section 1129(a)(8), a plan may be confirmed where, with respect to each class, either (i) such class has accepted the plan; or (ii) such class is not impaired under the plan. 11 U.S.C. § 1129(a)(8).  A class of claims is considered to have accepted a plan when at least two-thirds in amount (i.e., dollar value) and more than one-half in number of allowed claims of such class accept the plan, measured out of the claims that are actually voted.  11 U.S.C. § 1126(c).  For a class of "interests" (i.e., equity), acceptance by two-thirds in amount of allowed interests is required.  11 U.S.C. § 1126(d).

If section 1129(a)(8) is not met, and if a plan otherwise satisfies section 1129(a) (including the requirement that at least one impaired class of creditors has accepted the plan under section 1129(a)(10)), the plan may still be confirmed provided section 1129(b) is met.  7 COLLIER ON BANKRUPTCY § 1129.03[8].

As discussed above, voting has not yet occurred. Accordingly, whether the Plan meets the requirements of section 1129(a)(8) is **TO BE DETERMINED**.

**I.  Section 1129(a)(9): Meets Requirements**

Section 1129(a)(9) requires that, except to the extent that the holder of a particular claim agrees to a different treatment of such claim, the plan provides that:

> (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive . . . cash equal to the allowed amount of such claim;
> (B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each holder . . . will receive—
>
> > (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C) with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive . . . regular installment payments in cash—

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief . . . and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan . . .

As discussed below, the Plan **MEETS** the requirements of section 1129(a)(9).

**J. Section 1129(a)(9)(A): Meets Requirements**

Section 1129(a)(9)(A) requires that claims identified in 507(a)(2) and (3) are paid in cash in full on the effective date of a plan, except to the extent that the claimholder has agreed to different treatment. Section 507(a)(2) specifies administrative expenses allowed under section 503(b). Section 507(a)(3) specifies unsecured claims in involuntary cases.

The treatment of Administrative Expense Claims is set forth in Article 3.1 of the Plan. The Plan provides that *each holder* of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of such claim, cash in an amount equal to such claim unless such holder agrees to less favorable treatment. (Plan § 3.1.)

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(9)(A).

**K. Section 1129(a)(9)(B): Meets Requirements**

There are no classes of claims of a kind specified in section 507(a)(1) (domestic support obligations), 507(a)(4) (wages, salaries, and commissions), 507(a)(5) (employee benefit plans),

25

507(a)(6) (grain producers and United States fishermen), or 507(a)(7) (consumer deposits).

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(9)(B).

**L.  Section 1129(a)(9)(C): Meets Requirements**

Section 1129(a)(9)(C) requires that each holder of a section 507(a)(8) priority tax claim

receive installment payments in cash over a period not longer than five years after the order for

relief a value equal to the allowed amount of such claim as of the effective date of the plan.

Here, the Plan provides that each holder of an Allowed Priority Tax Claim shall either be

paid (i) in full in Cash on the date that is fifteen days after the date on which the Bankruptcy

Court enters an order allowing such Priority Tax Claim, or as soon thereafter as is practicable,

(ii) on the Effective Date of the Plan; or (iii) upon such later date as the Debtor and the holder of

such Allowed Priority Tax Claim otherwise agree in writing.  (*Id.* § 4.1)   Notably, the estimated

amount of Allowed Priority Tax Claims is $0.00.  (*Id.*)

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(9)(C).

**M. Section 1129(a)(10): To Be Determined**

Section 1129(a)(10) requires at least one class of impaired claims—if there are any

impaired classes—to have accepted the Plan.  Here, voting has not yet occurred.  As such,

whether the Plan **MEETS** the requirements of section 1129(a)(10) is **TO BE DETERMINED**.

**N.  Section 1129(a)(11): Meets Requirements**

Section 1129(a)(11) requires the Court to determine that:

> Confirmation of the plan is not likely to be followed by the
> liquidation, or the need for further financial reorganization, of the
> debtor or any successor to the debtor under the plan, unless such
> liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  That requirement, commonly known as the "feasibility" standard, requires that "the Plan is workable and has a reasonable likelihood of success."  *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. at 762.  "It is not necessary that success be guaranteed, but only that the plan present a workable scheme of organization and operation from which there may be a reasonable expectation of success."  *Id*. (quoting 5 COLLIER ON BANKRUPTCY § 1129.02[11], at 1129–54 (15th ed. 1991)); *see also In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) ("[T]he plan proponent need only demonstrate that there exists the reasonable probability that the provisions of the Plan can be performed.") (internal quotation omitted).

"Liquidating plans provide somewhat different considerations" and "there is less emphasis on future performance."  7 COLLIER ON BANKRUPTCY § 1129.02[11].  However, "[e]ven with such a reduced emphasis" the liquidation proposed in the plan must still be feasible. *Id.*

"A plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely."  *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012).  "The debtor must offer more than speculation about the source of funding for the plan."  *Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1003 (E.D. Va. 1994).

Courts have identified a number of factors to examine to determine whether a proposed plan is feasible:

> (1) the adequacy of the capital structure;
> (2) the earning power of the business;
> (3) the economic conditions;
> (4) the ability of management;
> (5) the probability of the continuation of the same management;

27

(6) the availability of prospective credit, both capital and trade;

(7) the adequacy of funds for equipment replacements;

(8) the provisions for adequate working capital; and

(9) any other matter bearing on the successful operation of the business to enable performance with the provisions of the plan.

Here, the Debtors will engage in either a Property Sale or Refinancing. While a Property Sale for the single-asset Debtor would constitute a liquidating plan, the Debtors have demonstrated that a sale is feasible. The Debtors have engaged Marcus for Property Sale and/or Refinancing efforts, and the net proceeds will fund the distributions.

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(11).

## O. Section 1129(a)(12): Meets Requirements

Section 1129(a)(12) requires that fees payable under 28 U.S.C. § 1930, as determined by the court at a hearing on confirmation of a plan, have been paid or are provided under the plan to be paid on its effective date. The Plan does not specifically provide for fees payable under 28 U.S.C. § 1930. However, there is no indication that any fees have not been paid. Accordingly, the Plan **MEETS** the requirements of section 1129(a)(12).

## P. Section 1129(a)(13): Inapplicable

To satisfy section 1129(a)(13), a plan must provide for continued payment of retiree benefits at either (1) the level originally provided by the debtor in possession without modification or (2) at the modified level established pursuant to the requirements of section 1114 by court order or agreement. 7 COLLIER ON BANKRUPTCY § 1129.02[13]. Section 1129(a)(13) is **INAPPLICABLE** as the Debtors do not pay retiree benefits.

28

**Q.  Section 1129(a)(14): Inapplicable**

Section 1129(a)(14) applies to individual chapter 11 debtors who are required to pay a domestic support obligation.  7 COLLIER ON BANKRUPTCY § 1129.02[14].  As the Debtors are not individuals, section 1129(a)(14) is **INAPPLICABLE**.

**R.  Section 1129(a)(15): Inapplicable**

Section 1129(a)(15) applies only "in a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan."  11 U.S.C. § 1129(a)(15).  As the Debtors are not individuals, section 1129(a)(15) is **INAPPLICABLE**.

**S.  Section 1129(a)(16): Inapplicable**

Section 1129(a)(16) states that "all transfers of property under [a] plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust."  11 U.S.C. § 1129(a)(16).  "This provision limits the permissible transfers by any nonprofit entity . . . ."  7 COLLIER ON BANKRUPTCY § 1129.02.  As the Debtors are not nonprofit entities, section 1129(a)(16) is **INAPPLICABLE**.

**T.  Section 1129(b): Inapplicable**

When at least one class of impaired creditors votes for confirmation of a plan, pursuant to section 1129(b) the court may "cram down" a plan over the dissent of another impaired class.  Cramdown is permitted so long as, with respect to all impaired dissenting classes, a plan (i) does not discriminate unfairly; and (ii) is fair and equitable.  "Unfair discrimination works only among claimants of equal non-bankruptcy priority."  7 COLLIER ON BANKRUPTCY § 1129.03[3][b][ix].  In addition, "there can be 'discrimination,' so long as it is not 'unfair.'"  *Id.* §

29

1129.03[3]. Courts will consider a cramdown fair and equitable if the absolute priority rule is followed. That is, if no claim that is junior to the dissenting class benefits from the proposed plan if the dissenting class is not paid in full. *Id.* § 1129.03[4][a][i].

Here, voting has not yet occurred but only one class is entitled to vote. As such, section 1129(b) is **INAPPLICABLE**.

### U. Section 1129(c): Meets Requirements

Section 1129(c) of the Bankruptcy Code provides that a court "may only confirm one plan." 11 U.S.C. § 1129(c). The Plan is the only plan for the Court's consideration. Accordingly, the Plan **MEETS** the requirements of section 1129(c).

### V. Section 1129(d): Inapplicable

Section 1129(d) provides that "on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 4 of the Securities Act of 1933." Here, no such request was made from a governmental unit. Accordingly, section 1129(d) is **INAPPLICABLE**. Regardless, it does not appear the purpose of the Plan is the avoidance of taxes or the application of the securities laws.

## IV. CONCLUSION

For the reasons detailed herein, the Court **APPROVES** the Disclosure Statement as containing adequate information.  Additionally, the Court **CONDITIONALLY APPROVES** the Plan subject to later voting.

**IT IS SO ORDERED.**

Dated:    June 5, 2026
          New York, New York


_____
*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge